Filed 8/27/12

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S188204 |
| v. | ) | |
| | ) | Ct.App. 4/1 D055701 |
| ANTHONY ARANDA, JR., | ) | |
| | ) | Riverside County |
| Defendant and Appellant. | ) | Super. Ct. No. SWF010404 |
| _____ | ) | |

It is a fundamental precept of our criminal justice system that before a jury may convict a defendant of a criminal offense, it must find that the prosecution has proved all elements of the offense beyond a reasonable doubt. State law and the federal Constitution require the trial court to instruct with regard to this fundamental principle when it advises the jurors of the applicable rules of law that govern their deliberation and decision. In California, a trial court ordinarily satisfies this obligation by instructing the jury under one of two "pattern" or "standard" reasonable doubt instructions. (See CALCRIM No. 220, CALJIC No. 2.90, hereafter sometimes referred to as the standard reasonable doubt instruction.)

In the present case, defendant was charged with two separate crimes, murder and participation in a criminal street gang (hereafter sometimes referred to as the gang offense). After the conclusion of the presentation of evidence and closing arguments, when the trial court instructed the jurors on the applicable legal

1

principles immediately prior to their deliberations, the court inadvertently failed to include the standard reasonable doubt instruction. With regard to the murder charge, however, the trial court's instructions did inform the jury that in order to find defendant guilty of that crime, or any lesser offense included in that crime, it must find that the prosecution had proved each of the required elements of the offense beyond a reasonable doubt. By contrast, the court's instructions relating to the gang offense did not indicate that every element of that charge must be proved beyond a reasonable doubt. The jury returned verdicts acquitting defendant of murder and finding him guilty of the lesser offense of voluntary manslaughter. It also found defendant guilty of the gang offense.

The question before us is whether the court's failure to include the standard reasonable doubt instruction in its predeliberation instructions in this case constituted error with regard to either the voluntary manslaughter conviction or the gang offense conviction and, if so, whether the error can and should be found harmless. In resolving those questions, we must consider both California and federal law because the inquiry is different depending upon whether the error arises from state law or from the federal Constitution.

For the reasons discussed below, we conclude that, in light of the instructions that were given with respect to the murder charge in this case, the trial court's omission of the standard reasonable doubt instruction did not constitute federal constitutional error as to the voluntary manslaughter conviction. Although the omission amounted to state law error as to that conviction because the court's other instructions did not include a *definition* of the term "reasonable doubt" as required by state law, we conclude that the state law error was harmless because there is no reasonable probability that the outcome would have been more favorable to defendant had the trial court's instructions at trial included a definition of "reasonable doubt."

2

With respect to the separate gang offense, the trial court's predeliberation instructions to jurors failed to explain that defendant could not be convicted unless the prosecution proved the elements of that crime beyond a reasonable doubt. We conclude that this omission constituted error under both state law and the federal Constitution. Furthermore, we conclude that the error, like most instructional errors of federal constitutional dimension, is amenable to harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*), and is not reversible per se. Our conclusion in this regard resolves a disagreement among the Courts of Appeal.

Applying the *Chapman* harmless error standard to assess the error's effect upon the jury's verdict on the gang offense, we conclude beyond a reasonable doubt that in light of the particular circumstances of this case as revealed by the record, there is no reasonable possibility that the jury did not apply the reasonable doubt standard of proof when it found defendant guilty of the gang offense. Accordingly, unlike the Court of Appeal, we conclude that this instructional error does not require reversal of defendant's conviction of the gang offense.

## I. FACTS AND PROCEDURAL BACKGROUND

Evidence introduced at trial showed that on a Friday night in September 2004, defendant attended a house party in Hemet where many of the partygoers, including defendant and the victim, Luis Gonzalez, were members of criminal street gangs. A failed drug transaction that had been initiated at the party ultimately led to a large backyard brawl. In the aftermath of the fight, defendant and others argued with Gonzalez, demanding that he leave the party. Defendant fatally shot Gonzalez when, according to defendant, Gonzalez rushed toward him waving a rock.

3

Defendant was charged with the crimes of murder and actively participating in a criminal street gang.[1] (Pen. Code, §§ 187, subd. (a), 186.22, subd. (a).)[2] In connection with the murder count, it was alleged that defendant committed that crime to benefit a criminal street gang (§ 186.22, subd. (b)), and by means of personally and intentionally discharging a firearm (§§ 12022.5, subd. (a), 12022.53, subd. (d)). It was further alleged for sentencing purposes that defendant had served three prior prison terms. (§ 667.5, subd. (b).)

Nine of the trial court's predeliberation instructions specifically referred to the prosecution's burden of proof beyond a reasonable doubt. One such instruction concerned the sufficiency of circumstantial evidence to prove guilt. (CALJIC No. 2.01.) Five instructions relating to homicide also referenced the reasonable doubt standard of proof. These instructions related to the degrees of murder (CALJIC No. 8.71), the availability of a manslaughter conviction in lieu of murder (CALJIC No. 8.72), the difference between murder and manslaughter (CALJIC No. 8.50), the so-called "acquittal first" rule for returning verdicts on the greater and lesser homicide offenses (CALJIC No. 8.75), and the definition of justifiable homicide (CALJIC No. 5.15). The court also instructed on the reasonable doubt standard of proof when describing the elements of the three sentence enhancement allegations related to the murder count. (See CALJIC Nos. 17.19, 17.24.2.)

---

[1] At the prosecutor's request, the trial court dismissed a third count charging defendant with unlawfully carrying a concealed weapon. (Pen. Code, former § 12025, subd. (b)(3), repealed and reenacted without substantive change as Pen. Code, § 25400, subd. (c)(3) by Stats. 2010, ch. 711, §§ 4, 6.)

[2] All further statutory references are to the Penal Code, unless otherwise indicated.

The jury acquitted defendant of murder and convicted him of the lesser offense of voluntary manslaughter (§ 192, subd. (a)).  It found not true the gang enhancement allegation related to the murder charge, but found the firearm allegations to be true.[3]  The jury also found defendant guilty of the gang offense. Defendant later admitted the three prior prison term allegations, and the court sentenced him to a total prison term of 24 years eight months.[4]

On appeal, defendant challenged his convictions on the ground that the trial court had erroneously failed to instruct the jury with CALJIC No. 2.90, the standard instruction on the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt.  (See also CALCRIM No. 220.)  The Court of Appeal agreed with defendant that the instructional omission amounted to federal constitutional error but upheld the voluntary manslaughter conviction, finding as to that count that the error was harmless beyond a reasonable doubt under *Chapman, supra*, 386 U.S. 18, because it was cured by the court's other detailed instructions.  The Court of Appeal reversed the gang offense conviction, however, concluding that there was "no cure" for the trial court's error in that respect and that, therefore, the error could not be considered harmless as to that count.

---

**3**      After the jury had rendered its verdicts, the prosecutor moved to strike the finding on the section 12022.53, subdivision (d), allegation on the ground that the enhancement was inapplicable to a voluntary manslaughter conviction.  The court granted the motion.

**4**      Defendant's sentence was comprised of the upper term of 11 years for the voluntary manslaughter conviction consecutive to the upper term of 10 years for the section 12022.5, subdivision (a), firearm enhancement, eight months (one-third the midterm) for the gang offense conviction, and one year each for the three prior prison terms.

Defendant petitioned for review, arguing that omission of the standard reasonable doubt instruction constituted structural error requiring automatic reversal of all convictions without regard to prejudice and that, even if such error were amenable to harmless error analysis, the Court of Appeal unreasonably concluded that it was harmless as to the voluntary manslaughter conviction. We granted defendant's petition for review to resolve a conflict in the Courts of Appeal regarding whether the erroneous failure to give the standard reasonable doubt instruction is reversible per se or is subject to harmless error review.

## II. DISCUSSION

### A. California's standard reasonable doubt instruction

California law imposes a duty on the trial court to instruct the jury in a criminal case on the presumption of innocence in favor of the defendant and the prosecution's burden of proving guilt beyond reasonable doubt. Specifically, Evidence Code section 502 requires a trial court to instruct the jury concerning which party bears the burden of proof on each issue, and the applicable standard of proof.[5] The prosecution's burden of proof in a criminal case is controlled by section 1096 of the Penal Code,[6] the substance of which has, in turn, been

---

[5] Evidence Code section 502 provides in full, "The court on all proper occasions shall instruct the jury as to which party bears the burden of proof on each issue and as to whether that burden requires that a party raise a reasonable doubt concerning the existence or nonexistence of a fact or that he establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt."

[6] Section 1096 states that "[a] defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his or her guilt is satisfactorily shown, he or she is entitled to an acquittal, but the effect of this presumption is only to place upon the state the burden of proving him or her guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs is

*(footnote continued on next page)*

6

incorporated into the standard reasonable doubt instructions, CALJIC No. 2.90 and CALCRIM No. 220.  Tracking the language of section 1096, the standard instructions describe the presumption of innocence and the requirement of proof beyond a reasonable doubt, and provide the legislatively approved definition of reasonable doubt.**7**  A court satisfies its statutory obligation to instruct on these

---

*(footnote continued from previous page)*

open to some possible or imaginary doubt.  It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.' "

**7**      At the time of defendant's trial in 2009, CALJIC No. 2.90 read as follows: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether [his] [her] guilt is satisfactorily shown, [he] [she] is entitled to a verdict of not guilty.  This presumption places upon the People the burden of proving [him] [her] guilty beyond a reasonable doubt.  [¶]  Reasonable doubt is defined as follows:  It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt.  It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge."

       CALCRIM No. 220, which also was available at the time of defendant's trial, reads as follows:  "The fact that a criminal charge has been filed against the defendant[s] is not evidence that the charge is true.  You must not be biased against the defendant[s] just because (he/she/they) (has/have) been arrested, charged with a crime, or brought to trial.  [¶]  A defendant in a criminal case is presumed to be innocent.  This presumption requires that the People prove a defendant guilty beyond a reasonable doubt.  Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt [unless I specifically tell you otherwise].  [¶]  Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true.  The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.  [¶]  In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial.  Unless the evidence proves the defendant[s] guilty beyond a reasonable doubt, (he/she/they) (is/are) entitled to an acquittal and you must find (him/her/them) not guilty."  (See Cal. Rules of

*(footnote continued on next page)*

principles by giving CALJIC No. 2.90 or CALCRIM No. 220. As section 1096a explains, "[i]n charging a jury, the court may read to the jury Section 1096, and no further instruction on the . . . presumption of innocence or defining reasonable doubt need be given."

With respect to the principles that a defendant is accorded the presumption of innocence and the prosecution bears the burden of proving guilt beyond a reasonable doubt, instruction with CALJIC No. 2.90 or CALCRIM No. 220 also satisfies the long-established rule requiring sua sponte instruction on "those principles closely and openly connected with the facts before the court, and . . . necessary for the jury's understanding of the case." (*People v. St. Martin* (1970) 1 Cal.3d 524, 531.) We applied this rule in *People v. Vann* (1974) 12 Cal.3d 220 (*Vann*), to conclude that the trial court was required to give a "specific instruction that the defendants were presumed to be innocent and that the prosecution had the burden of proving their guilt beyond a reasonable doubt." (*Id*. at p. 225; see *People v. Soldavini* (1941) 45 Cal.App.2d 460, 463-464 [a trial court's duty to instruct on the presumption of innocence and standard of proof is met by instructing in the language of § 1096].)

However, our decisions also make clear that a trial court's failure to give the *standard* reasonable doubt instruction does not necessarily constitute state law error. Although use of the standard instruction for such purposes is preferred, it is not mandatory. (*People v. Brown* (2004) 33 Cal.4th 382, 392 & fn. 2; *People v. Freeman* (1994) 8 Cal.4th 450, 503-504; *People v. Zepeda* (2008) 167

_____

*(footnote continued from previous page)*

Court, rule 2.1050 [declaring the CALCRIM instructions the "official instructions" for Cal. criminal courts].)

Cal.App.4th 25, 30 [a trial court is not required to instruct the jury in the language of section 1096]; *People v. Castro* (1945) 68 Cal.App.2d 491, 498 [same].) We note furthermore that the court's failure to give the standard reasonable doubt instruction does not amount to state law error when its substance is covered in other instructions given by the court. (See *People v. Soldavini, supra*, 45 Cal.App.2d at p. 463; see also *Vann, supra*, 12 Cal.3d at pp. 226-227.)

Under those circumstances in which the court's failure to include the standard reasonable doubt instruction in its predeliberation instructions does constitute state law error, such error is reviewed for prejudice under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 837, which inquires whether there is a "reasonable probability" that a result more favorable to the defendant would have occurred absent the error. (See *People v. Mayo* (2006) 140 Cal.App.4th 535, 550-551.)

Before addressing whether the court's failure to give the standard reasonable doubt instruction in its predeliberation instructions amounted to state law error in this case, we first decide whether the omission of the standard reasonable doubt instruction constituted federal constitutional error with regard to either the voluntary manslaughter conviction or the gang offense conviction and, if so, whether the federal instructional error is subject to the more demanding standard for federal constitutional harmless error review, or requires automatic reversal.

### B. The presumption of innocence accorded to a criminal defendant

As previously mentioned, the standard reasonable doubt instruction, CALJIC No. 2.90 or CALCRIM No. 220, embodies two interrelated principles, namely, the defendant's presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt. The first of these principles, the presumption of innocence, "is a basic component of a fair trial under our system of criminal

9

justice." (*Estelle v. Williams* (1976) 425 U.S. 501, 503.) Instruction on the presumption of innocence underscores both (1) that the prosecution bears the burden of proving the defendant's guilt and the defendant does not have the burden of proving his or her innocence, and (2) that the defendant has the fundamental right "to have his [or her] guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." (*Taylor v. Kentucky* (1978) 436 U.S. 478, 485; see *People v. Hawthorne* (1992) 4 Cal.4th 43, 72.)[8]

Regarding the presumption of innocence, the United States Supreme Court has declared that the federal due process clause does not require a trial court to use any particular phrase or form of words when instructing on this principle. (*Taylor v. Kentucky, supra*, 436 U.S. at p. 485.) We followed *Taylor* in *People v. Hawthorne, supra*, 4 Cal.4th 43 (*Hawthorne*), to conclude that so long as the court's instructions to the jury express the substance of the presumption of innocence, it will satisfy the dictates of due process. (*Id*. at p. 72.)

In *Hawthorne, supra*, 4 Cal.4th 43, the defendant claimed that he was deprived of his due process right to the presumption of innocence by the court's failure to instruct with the complete text of CALJIC No. 1.00. The omitted portion of that instruction would have admonished the jurors in relevant part not to be biased against defendant because he " 'has been arrested for this offense, or because he has been charged with a crime, or because he has been brought to

---

[8]     To the extent that the standard instruction's reference to the presumption of innocence also conveys the requirement of proof beyond a reasonable doubt, its omission from the predeliberation instructions in this case is discussed *post*, in part II.C.

trial' " and that " '[n]one of these circumstances is evidence of his guilt.' " (*Hawthorne, supra,* at p. 71, fn. 18.) We rejected the defendant's claim of a federal constitutional deprivation, concluding instead that the portion of CALJIC No. 1.00 that was given by the court and the "full panoply of instructions" (*Hawthorne, supra,* at p. 73) on the presumption of innocence, the reasonable doubt standard, and the prosecution's burden of proof embodied in CALJIC No. 2.90 and CALJIC No. 2.91, fully expressed to the jury its responsibility to decide the defendant's guilt based upon the evidence adduced at trial. (*Hawthorne, supra*, at pp. 71-73.)

Although in this case the trial court did not give the standard reasonable doubt instruction, unlike in *Hawthorne*, the court did instruct the jury with the complete text of CALJIC No. 1.00, which informed the jurors in relevant part that they must determine defendant's guilt based on the evidence received at trial, and not to consider the fact of his arrest or that he is being brought to trial. Given this instruction, and its expression of the substance of the presumption of innocence, the trial court's failure to include the standard reasonable doubt instruction's admonition on the presumption of innocence did not amount to federal constitutional error.[9]

---

[9] The United State Supreme Court has explained that omitting instruction on the presumption of innocence altogether "does not in and of itself violate the Constitution" (*Kentucky v. Whorton* (1979) 441 U.S. 786, 789), and that the constitutional inquiry for failure to instruct on this principle is to evaluate the omission "in light of the totality of the circumstances — including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors — to determine whether the defendant received a constitutionally fair trial." (*Ibid.*) We need not undertake such an inquiry here, however, because the court did not fail to instruct on the principle of the presumption of innocence.

11

## C. The prosecution's burden of proving a defendant's guilt beyond a reasonable doubt

Under the due process clauses of the Fifth and Fourteenth Amendments, the prosecution must prove a defendant's guilt of a criminal offense beyond a reasonable doubt, and a trial court must so inform the jury. (*Victor v. Nebraska* (1994) 511 U.S. 1, 5 (*Victor*); *In re Winship* (1970) 397 U.S. 358, 364.) As previously mentioned, this court concluded in *Vann, supra*, 12 Cal.3d 220, that the trial court's state law duty to instruct the jurors on the principles of law that govern their deliberation and decision included the obligation to instruct that a defendant is presumed to be innocent and that the prosecution had the burden of proving his or her guilt beyond a reasonable doubt. (*Id.* at p. 225.) *Vann* also recognized the federal constitutional implications of that rule, observing that "[t]he reasonable-doubt standard of proof in criminal proceedings is . . . rooted in the federal Constitution." (*Id.* at p. 227.)

In *Vann*, like here, the trial court inadvertently failed to include in its predeliberation instructions to the jury the standard reasonable doubt instruction. (*Vann, supra*, 12 Cal.3d at pp. 225-226.) Concluding that the omission amounted to federal constitutional error, *Vann* rejected the respondent's contention that because the court's instructions otherwise covered the subject, there was no error. (*Id.* at pp. 226-227.) In that case, two of the trial judge's predeliberation instructions had referenced the reasonable doubt standard. The *Vann* decision found, however, that those isolated references to the reasonable doubt standard fell "far short" of conveying the requirement that the defendants were entitled to acquittal unless the prosecution proved beyond a reasonable doubt each element of the charged crimes. (*Vann, supra,* at p. 227.) Specifically, although the jury was informed that it must not return a verdict based on *circumstantial* evidence unless " 'each fact which is essential to complete a set of circumstances necessary to

establish a defendant's guilt has been proved beyond a reasonable doubt' " (*Vann, supra,* at p. 226; see CALJIC No. 2.01), that instruction failed to make clear that guilt based on *direct* evidence also must be proved beyond a reasonable doubt. (*Vann, supra*, at p. 226.) Likewise, the instruction advising that evidence of " 'good character may be sufficient to raise a reasonable doubt whether a defendant is guilty,' " did not connect the reasonable doubt standard to any issues other than character, or explain that a reasonable doubt would require a verdict of not guilty. (*Vann, supra*, at p. 227; see CALJIC No. 2.40.) *Vann* also noted that neither the court's remarks during jury selection regarding the requisite burden of proof nor the attorneys' statements on that subject during closing argument "cured" the court's failure to instruct that the prosecution was required to prove the defendants' guilt of each charged crime beyond a reasonable doubt. (*Vann, supra*, at p. 227, fn. 6.)

The United States Supreme Court has never directly addressed the constitutional consequences of a trial court's failure to instruct on the requirement of proof beyond a reasonable doubt. But nothing in the high court's pronouncements subsequent to this court's decision in *Vann* calls into question *Vann*'s conclusion that the omission of the standard reasonable doubt instruction amounted to a federal due process violation because the instructions that were given by the court failed to explain that the defendants could not be convicted "unless each element of the crimes charged was proved to the jurors' satisfaction beyond a reasonable doubt." (*Vann, supra*, 12 Cal.3d at p. 227.) For example, in *Victor, supra*, 511 U.S. 1, the court addressed whether the standard instructions defining the reasonable doubt standard of proof that were given in two state criminal trials correctly conveyed the constitutional requirement that the prosecution prove the elements of each charged offense beyond a reasonable doubt. Although *Vann* predated the decision in *Victor*, its reasoning is consistent

13

with the high court's explanation in *Victor* that "so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, [citation], the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." (*Victor, supra*, at p. 5.)

We conclude that *Vann* states the proper inquiry with regard to determining the federal constitutional implications of the trial court's failure to include the standard reasonable doubt instruction in its predeliberation instructions to the jury, and we follow that approach in resolving the question presented in this case. Specifically, the omission of the standard reasonable doubt instruction will amount to a federal due process violation when the instructions that were given by the court failed to explain that the defendants could not be convicted "unless each element of the crimes charged was proved to the jurors' satisfaction beyond a reasonable doubt." (*Vann, supra*, 12 Cal.3d at p. 227.) When the trial court's instructions otherwise cover this constitutional principle, the failure to instruct with the standard reasonable doubt instruction does not constitute federal constitutional error.

> 1. *The omission of CALJIC No. 2.90 or CALCRIM No. 220 from the predeliberation instructions did not constitute federal constitutional error as to the voluntary manslaughter conviction*

Although the court failed to include the standard reasonable doubt instruction in its predeliberation instructions to the jury, a number of the given instructions referred to the prosecution's burden of proving defendant's guilt beyond a reasonable doubt. One of these instructions concerned the evaluation of circumstantial evidence. The remainder of the references to the reasonable doubt standard of proof appeared in instructions relating to the murder charge, its lesser included offenses, and the sentence enhancement allegations associated with that

14

count. As we explain, because the court's instructions covered the requirement that the prosecutor bore the burden of proving defendant's guilt of the murder charge and its lesser included offenses (including voluntary manslaughter) beyond a reasonable doubt, the omission of the standard reasonable doubt instruction did not violate federal due process principles as to defendant's conviction of voluntary manslaughter.

*Vann, supra,* 12 Cal.3d 220, and the Court of Appeal decisions applying its reasoning have held that a trial court's predeliberation instructions connecting the reasonable doubt standard to only lesser included offenses and narrow evidentiary or procedural determinations are insufficient to satisfy the court's constitutional duty to instruct on the prosecution's burden of proving each charged offense beyond a reasonable doubt. In *People v. Elguera* (1992) 8 Cal.App.4th 1214, 1218 (*Elguera*), the trial court referred to the reasonable doubt standard in its predeliberation instructions only when explaining the use of circumstantial evidence to prove guilt. (CALJIC No. 2.01.) The trial court's predeliberation instructions in *People v. Crawford* (1997) 58 Cal.App.4th 815, 820 (*Crawford*), mentioned reasonable doubt only in instructions on circumstantial evidence, lesser offenses, and deadly weapon use. (CALJIC Nos. 2.01, 17.16.) Similarly, in *People v. Phillips* (1997) 59 Cal.App.4th 952, 957 (*Phillips*), the trial court's predeliberation instructions referenced the prosecution's burden of proof only in connection with circumstantial evidence, a defendant's choice not to testify at trial, and lesser included offenses. (CALJIC Nos. 2.01, 2.61, 17.10.) Finally, in *People v. Flores* (2007) 147 Cal.App.4th 199, 212-213 (*Flores*), the trial court mentioned the reasonable doubt standard only as it applied to circumstantial evidence and a defendant's choice not to testify (CALJIC Nos. 2.01, 2.61), and in connection with special findings on the statute of limitations as to three of the 19 sexual offense charges and the section 667.61 sentence enhancement allegations

15

associated with all charged counts.  In each of these cases, the trial court's various instructions highlighted specific applications of the proof beyond a reasonable doubt requirement, but they did not indicate that that standard of proof must be met as to each crime of which the defendant actually was convicted.  As the Court of Appeal observed in *Flores, supra*, at page 216, it cannot be presumed "that a reasonable doubt instruction given in a *specific* context . . . will necessarily be understood by all of the jurors to apply *generally* to their determination of the defendant's guilt on the charged offenses."

However, in this case, unlike in *Vann*, the trial court referred to the reasonable doubt standard not only in its instructions on circumstantial evidence but, much more significantly, in its detailed instructions regarding the jury's obligation with respect to the elements of murder and to the elements of all of its lesser included offenses, including voluntary manslaughter.  For example, the proof beyond a reasonable doubt standard was articulated in the general instructions on determining the degree of murder and deciding between murder and manslaughter.[10]  (CALJIC Nos. 8.71, 8.72.)  The jurors were then specifically instructed that "[i]f you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime of first degree murder as charged in Count 1 and

---

[10]    CALJIC No. 8.71 informed the jurors that "[i]f you are convinced beyond a reasonable doubt and unanimously agree that the crime of murder has been committed by a defendant, but you unanimously agree that you have a reasonable doubt whether the murder was of the first or of the second degree, you must give defendant the benefit of that doubt and return a verdict fixing the murder as of the second degree [as well as a verdict of not guilty of murder in the first degree]."

CALJIC No. 8.72 stated:  "If you are convinced beyond a reasonable doubt and unanimously agree that the killing was unlawful, but you unanimously agree that you have a reasonable doubt whether the crime is murder or manslaughter, you must give the defendant the benefit of that doubt and find it to be manslaughter rather than murder."

16

you unanimously so find, *you may convict him of any lesser crime provided you are satisfied beyond a reasonable doubt that he is guilty of the lesser crime*." (CALJIC No. 8.75, italics added.)  Defendant argues that this instruction was inadequate because it failed to assign the burden of proof to the prosecution.  We observe, however, that in a similarly explicit instruction, the jury was told that "[t]o establish that a killing is murder and not manslaughter, the burden is on the People to prove beyond a reasonable doubt each of the elements of murder and that the act which caused the death was not done in the heat of passion or upon a sudden quarrel or in the actual, even though unreasonable, belief in the necessity to defend against imminent peril to life or great bodily injury."  (CALJIC No. 8.50.)  Furthermore, in connection with defendant's claim of self-defense, the court instructed the jury that "[t]he burden is on the prosecution to prove beyond a reasonable doubt that the homicide was unlawful, that is, not justifiable [or] excusable."  (CALJIC No. 5.15.)

We note that the jurors in the present case received many of the same instructions given in *People v. Mayo, supra,* 140 Cal.App.4th 535, in which the Court of Appeal concluded that omission of the standard reasonable doubt instruction did not constitute federal constitutional error because, taken together, the instructions adequately conveyed the requisite standard of proof.  The defendant in *Mayo* was charged with, and convicted of, a single count of murder.  (*Id*. at p. 539.)  As in *Vann* and the Court of Appeal cases discussed *ante,* the trial court failed to give the standard reasonable doubt instruction in its predeliberation instructions to the jury.  (*Mayo, supra*, at pp. 538-539.)  In *Mayo*, however, the trial court repeatedly and accurately described the prosecution's burden of proving guilt beyond a reasonable doubt when instructing specifically on the charge of murder and its lesser included offenses.  For instance, the court discussed the reasonable doubt standard when explaining the distinction between murder and

17

manslaughter.  (CALJIC No. 8.50; see *Mayo, supra*, at p. 545.)  The court's instructions on determining the degree of murder and choosing between murder and the lesser included offense of manslaughter also referred to the requisite standard of proof.  (See CALJIC Nos. 8.71, 8.72, 8.75; *Mayo, supra*, at p. 545.)  Distinguishing the predeliberation instructions in that case from the inadequate instructions given in *Vann* and its progeny, the *Mayo* court reasoned that the various references to the standard of proof "related to the murder charge itself and directly informed the jury that, to convict Mayo of murder, it had to find each and every element of that charge beyond a reasonable doubt."  (*Mayo, supra*, at p. 547.)

In this case, like in *Mayo*, the trial court repeatedly referred to the prosecution's burden of proving guilt beyond a reasonable doubt when instructing on the murder charge and its lesser included offenses, clearly and directly connecting the requisite standard of proof to those offenses.  We conclude that in light of these other instructions the omission of the standard instruction on the prosecutor's burden of proving guilt beyond a reasonable doubt did not amount to federal constitutional error with regard to defendant's conviction of voluntary manslaughter.

> 2.  *The omission of CALJIC No. 2.90 or CALCRIM No. 220 from the predeliberation instructions amounted to federal constitutional error as to the gang offense conviction*

As we have explained, the trial court's omission of the standard reasonable doubt instruction did not constitute an error of federal constitutional dimension with regard to the voluntary manslaughter conviction because the court's instructions on murder and its lesser included offenses clearly connected the reasonable doubt standard to the voluntary manslaughter offense.  The same cannot be said concerning the count charging defendant with active participation

18

in a criminal street gang in violation of section 186.22, subdivision (a), however, because neither the instruction on the elements of that offense nor any other instruction given by the court connected the reasonable doubt standard of proof to that charge. The court read CALJIC No. 6.50, which addressed the requisite elements of the gang offense, but that instruction did not explain that the prosecution must prove each of those elements beyond a reasonable doubt.

We note that the court did refer to the reasonable doubt standard when it instructed on the elements of the section 186.22, subdivision (b), sentencing allegation that defendant committed the *murder* for the benefit of a criminal street gang. (CALJIC No. 17.24.2.) Specifically, the jurors were informed that "[t]he People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true." But the instruction on this sentencing allegation neither addressed nor illuminated the standard of proof as to the substantive crime of active participation in a gang. In *Flores*, *supra*, 147 Cal.App.4th at page 217, the Court of Appeal similarly found that a reference to the reasonable doubt standard in an instruction concerning the one-strike sentence enhancement allegations under section 667.61 would not necessarily be understood by the jury to also apply to its determination of defendant's guilt of the sexual offenses to which the enhancements were linked. That the gang allegation instruction connected the requisite standard of proof to the gang offense is even more dubious here. This is so because the reference to the reasonable doubt standard was contained in an instruction concerning a sentencing allegation associated with the murder charge, an entirely different count.

As already noted, in the present case, like in *Vann*, the trial court gave the standard instruction on circumstantial evidence, which states in relevant part that "each fact which is essential to complete a set of circumstances necessary to

19

establish the defendant's guilt must be proved beyond a reasonable doubt."
(CALJIC No. 2.01; see CALCRIM Nos. 224, 225.) The court in *Vann* viewed the circumstantial evidence instruction as inadequate to satisfy the court's duty to instruct that the defendants were entitled to acquittal unless each of the crimes charged were proved beyond a reasonable doubt. In *Vann*, the prosecution's case depended largely on *direct* evidence. (*Vann, supra*, 12 Cal.3d at p. 226.) Similarly here, the prosecution's gang offense case was based largely on direct evidence, including defendant's testimony admitting that he was a member of the Hemet Trece gang at the time of the shooting. The circumstantial evidence instruction did not adequately cover the principle that defendant could be convicted of the gang offense only if the prosecution proved his guilt of the gang offense beyond a reasonable doubt.

We conclude that with regard to the gang offense conviction the court's omission of the standard reasonable doubt instruction deprived defendant of his federal constitutional right to due process because the court's instructions did not otherwise cover the requirement that the prosecution prove defendant's guilt of the gang offense beyond a reasonable doubt.[11]

---

[11]    During jury selection, the trial court did read CALJIC No. 2.90 to the entire pool of prospective jurors. *Vann* noted that instructions during jury selection did not "cure" the court's failure to instruct the jury on the requirement that the prosecutor prove the defendant's guilt of each charged offense beyond a reasonable doubt. (See *Vann, supra*, 12 Cal.3d at p. 227, fn. 6.) Indeed, no decision has viewed instructions and remarks at this stage of the proceedings as an adequate substitute for the court's duty to instruct the jurors prior to deliberation on the principle of proof beyond a reasonable doubt. (See *Flores, supra,* 147 Cal.App.4th at p. 215 (*Flores*) [finding it generally "unreasonable to expect prospective jurors . . . to give the necessary attention and weight to instructions given by a trial court during jury selection"].) Although a trial court's instructions or remarks during jury selection cannot relieve the court of its obligation to properly instruct the jury during trial regarding the prosecution's burden of

*(footnote continued on next page)*

*i. The omission of a standard reasonable doubt instruction in*
*violation of federal constitutional principles is subject to*
*harmless error review*

Having determined that the trial court's omission of the standard reasonable doubt instruction amounted to federal constitutional error as to the gang offense, we next must decide whether the error is amenable to harmless error analysis or requires automatic reversal without regard to prejudice.

As previously discussed, *Vann* concluded that the trial court's failure in that case to satisfy its obligation to instruct on the prosecution's burden of proving the defendants' guilt beyond a reasonable doubt violated federal due process principles. (*Vann*, *supra*, 12 Cal.3d at pp. 227-228.) Because the error implicated the federal Constitution, *Vann* assessed the effect of the error by applying the harmless error analysis for federal constitutional errors that was established in *Chapman, supra*, 386 U.S. 18. (*Vann*, *supra*, at p. 228.) We observe, however, that *Vann* predated a significant line of decisions by the United States Supreme Court illustrating the types of errors qualifying as structural defects that are not amenable to harmless error analysis and instead are inherently prejudicial, and the types of errors that properly can be assessed for harmlessness. Accordingly, we must address anew the question whether the error in this case can be found harmless. In so doing, we resolve a conflict on this point that has arisen in a number of Court of Appeal opinions decided after this court's decision in *Vann*.

---

*(footnote continued from previous page)*

proving defendant's guilt beyond a reasonable doubt, this does not mean that statements made by the court during jury selection to each of the jurors who actually served on the jury may not be considered along with any other potentially relevant factors in determining whether, in light of all the circumstances of a particular case, the court's error should properly be found harmless. (See *post*, pp. 33-35.)

21

As explained below, we conclude that when the court's omission of the standard reasonable doubt instruction constitutes federal constitutional error because the principle, although mentioned elsewhere in the instructions, was not specifically linked to the elements of a charged offense, but the court has not instructed with a definition of reasonable doubt that effectively lowers the prosecution's burden of proof, the error is subject to harmless error review.

*Chapman, supra,* 386 U.S. 18, established that federal constitutional errors are properly subject to review for harmlessness.  In the nearly 50 years since *Chapman* was decided, the high court repeatedly has emphasized that most errors implicating a federal constitutional right, including most instructional errors, are amenable to harmless error analysis and that only a "very limited class of cases" are subject to per se reversal.  (*Johnson v. United States* (1997) 520 U.S. 461, 468; see *Hedgpeth v. Pulido* (2008) 555 U.S. 57, 61; *Neder v. United States* (1999) 527 U.S. 1, 8 (*Neder*); *Rose v. Clark* (1986) 478 U.S. 570, 578 [errors requiring automatic reversal "are the exception and not the rule"].)  In *Arizona v. Fulminante* (1991) 499 U.S. 279, the high court categorized constitutional errors into two groups.  Most errors, the court explained, are " 'trial error[s],' " occurring "during the presentation of the case to the jury." (*Id*. at p. 307.)  They are amenable to harmless error review because they can be "quantitatively assessed in the context of other evidence presented in order to determine whether [their] admission was harmless beyond a reasonable doubt." (*Id*. at p. 308.)  "Structural defects," on the other hand, "defy analysis by 'harmless-error' standards" (*id*. at p. 309) because they are not "simply an error in the trial process," but rather an error "affecting the framework within which the trial proceeds." (*Id*. at p. 310; see *Brecht v. Abrahamson* (1993) 507 U.S. 619, 630 [structural errors require automatic reversal because "they infect the entire trial process"].)

22

The high court has identified as structural error constitutional violations such as the denial of counsel or of self-representation, racial discrimination in jury selection, and trial before a biased judge. (See *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 149 [listing structural errors]; *Neder, supra*, 527 U.S. at p. 8 [same].) The court also has provided further guidance on categorizing errors as structural. For example, it explained in *Neder* that structural errors "deprive defendants of 'basic protections' " (*Neder, supra,* at p. 8) and "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." (*Id.* at p. 9, italics omitted; see *Washington v. Recuenco* (2006) 548 U.S. 212, 218-219; *Rose v. Clark, supra*, 478 U.S. at p. 577.) In other pronouncements on the subject of structural error, however, the court has focused, not on the effect of the constitutional violation at trial, but on "the difficulty of assessing the effect of the error" or the "irrelevance of harmlessness." (*United States v. Gonzalez-Lopez, supra,* at p. 149, fn. 4.)

The court's reasoning in *United States v. Gonzalez-Lopez, supra*, 548 U.S. 140, illustrates the view that the touchstone for determining the appropriateness of harmless error review is the ability to ascertain the effect of the constitutional violation. *Gonzalez-Lopez* involved the deprivation of the right to retained counsel of one's choice. In holding that the constitutional violation was "structural," the court emphasized that the consequences of that error were " 'necessarily unquantifiable and indeterminate.' " (*Id*. at p. 150.) Noting the myriad ways that representation might have proceeded had the trial court not erroneously disqualified the defendant's chosen attorney, the court observed that conducting a harmless error analysis of that error "would be a speculative inquiry into what might have occurred in an alternate universe." (*Ibid*.)

The high court had relied on similar reasoning in *Sullivan v. Louisiana* (1993) 508 U.S. 275 (*Sullivan*), to hold that the trial judge's misleading

23

description of the reasonable doubt standard given in that case was structural error and required automatic reversal. The trial judge in *Sullivan* had read to the jury an instruction similar to the one given in *Cage v. Louisiana* (1990) 498 U.S. 39, which defined the reasonable doubt standard by referring to " 'grave uncertainty' " and " 'substantial doubt,' " terms that effectively and improperly lowered the prosecution's burden of proof. (*Id.* at p. 40, italics omitted; see *Sullivan*, *supra*, at p. 277.) *Sullivan* concluded that the deprivation of the right to a jury verdict of guilt beyond a reasonable doubt resulting from the defective instruction met the definition of structural error because its consequences were "necessarily unquantifiable and indeterminate." (*Sullivan, supra,* at p. 282.) Harmless error analysis was not possible, *Sullivan* also explained, because the misdescription of the prosecution's burden of proof "vitiate[d] *all* the jury's findings." (*Id*. at p. 281, original italics.) In describing the illogic of conducting a harmless error review of the error in that case, *Sullivan* observed that the "proper role" (*id.* at p. 280) of the appellate court is to look to "the basis on which 'the jury *actually rested* its verdict.' [Citation.]" (*Id*. at p. 279.) The premise of *Chapman* was "simply absent" in that case, *Sullivan* explained, because there was "no jury verdict of guilty-beyond-a-reasonable doubt . . . upon which harmless-error scrutiny [could] operate." (*Sullivan, supra,* at p. 280.)

An instruction that effectively lowers the prosecution's burden of proving guilt beyond a reasonable doubt is structural error because it "vitiates *all* the jury's findings" and its effect on the verdict is "necessarily unquantifiable and indeterminate." (*Sullivan, supra*, 508 U.S. at pp. 281, 282; see *Hedgpeth v. Pulido, supra*, 555 U.S. at p. 61 ["harmless error analysis applies to instructional errors so long as the error at issue does not categorically ' "vitiat[e] *all* the jury's findings" ' "].) We believe, however, that when, as here, the court has not misdefined the reasonable doubt standard in a manner that improperly lowers the

24

prosecution's burden of proof, but nonetheless has failed to satisfy its federal constitutional obligation to instruct on the requirement that the prosecution prove the defendant's guilt of *each* charged offense beyond a reasonable doubt, the effect of the instructional omission, like most errors of constitutional dimension, is amenable to harmless error review. Under these circumstances, other components of the trial, such as the instructions relating to other charged crimes, the verdicts on those counts, and other potentially relevant circumstances (such as the content of the attorneys' closing argument or the nature and extent of a trial court's remarks during jury selection with regard to the reasonable doubt requirement), may support a determination that the theoretical gap left by the court's failure during predeliberation instructions to link the reasonable doubt standard of proof to a certain charged offense had in reality been filled by these other components of trial. In such cases, a reviewing court could determine that there is no reasonable possibility that the jury did not actually apply the beyond a reasonable doubt standard in finding the defendant guilty of the offense in question.

The Courts of Appeal in *Flores, supra*, 147 Cal.App.4th at pages 203-211, and *Elguera, supra*, 8 Cal.App.4th at pages 1219-1220, as well as the Court of Appeal in this case, correctly concluded that the *Chapman* standard applies to the determination whether reversal is required when the trial court fails to give the standard reasonable doubt instruction in its predeliberation instructions to the jury. The Court of Appeal in *Crawford, supra*, 58 Cal.App.4th 815, held to the contrary that the high court's decision in *Sullivan* "compel[led]" automatic reversal. *Crawford* reasoned that such an error denies a defendant "the most elementary and fundamental right provided by our system of justice." (*Crawford, supra,* at pp. 822, 823.) We agree with *Crawford*'s characterization of this instructional error as affecting an extremely serious and basic constitutional guarantee. But to declare an error "structural," it is not enough to say that the error denied the

25

defendant a "most elementary and fundamental right." As the high court's decisions make clear, the deprivation of important constitutional protections *can* be subject to harmless error analysis. (See *Arizona v. Fulminante, supra,* 499 U.S. at p. 312 [that the erroneous admission of an involuntary confession "may be devastating" to a defendant "is not a reason for eschewing the harmless-error test entirely"].) To make that determination, we ask whether the error rendered the *trial* "fundamentally unfair or an unreliable vehicle for determining guilt or innocence" (*Neder, supra,* 527 U.S. at p. 9), or whether the effect of the error is "necessarily unquantifiable and indeterminate" (*Sullivan, supra*, 508 U.S. at p. 282). The importance of the constitutional right, standing alone, is not dispositive of the question whether the error is susceptible to harmlessness review.

Significantly, the appellate court in *Crawford* conducted a harmless error review as an alternate basis for its conclusion that the error required reversal of the judgment. (*Crawford, supra,* 58 Cal.App.4th at pp. 823, 824-826.) Its alternate analysis, which took into account the instructions given at trial that correctly referred to the reasonable doubt standard, the court's remarks during jury selection, and the argument of counsel, is consistent with our conclusion that the erroneous omission of a standard reasonable doubt instruction can be assessed for harmlessness.

*Phillips, supra*, 59 Cal.App.4th 952, likewise held that the omission of the standard reasonable doubt instruction was structural error and not subject to harmless error analysis. In the appellate court's view, "the trial court's error suffered no less a constitutional defect than did the trial court in *Sullivan*." (*Id.* at p. 957.) As discussed *ante*, however, the gravity of the error does not by itself determine whether such an error is amenable to harmless error analysis. As in *Crawford*, the *Phillips* case did not involve a description of the reasonable doubt standard that lowered the prosecution's burden of proof. Contrary to the appellate

26

court's conclusion in *Phillips*, we conclude that the effect of a trial court's failure to include the standard reasonable doubt instruction can be assessed for harmlessness.[12]

> ii. *Application of the* Chapman *standard to assess the effect of the erroneous omission of the standard reasonable doubt instruction with regard to the gang offense conviction*[13]

Under *Chapman*, a federal constitutional error is harmless when the reviewing court determines "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman, supra,* 386 U.S. at p. 24.) When there is " 'a reasonable possibility' " that the error might have contributed to the verdict, reversal is required. (*Ibid*.) When, in violation of federal constitutional commands, the court's predeliberation instructions have failed to cover the principle that the prosecution must prove the defendant's guilt with respect to each of the charged offenses beyond a reasonable doubt, the effect of such an error is assessed by asking whether there is a reasonable possibility that the verdict in question was not based upon a finding of guilt beyond a reasonable doubt. If, after examination of the record, the reviewing court concludes beyond a reasonable doubt that the jury must have found the defendant's guilt beyond a reasonable doubt, the error is harmless. If, on the other hand, the reviewing court cannot draw this conclusion, reversal is required.

---

[12] We disapprove *Crawford, supra*, 58 Cal.App.4th 815, and *People v. Phillips, supra*, 59 Cal.App.4th 952, to the extent they hold that the omission of CALJIC No. 2.90 in violation of the federal Constitution is structural error and requires automatic reversal.

[13] Prior to oral argument, at this court's request, the parties filed supplemental briefs addressing this issue.

The reviewing court conducting a harmless error analysis under *Chapman* looks to the "whole record" to evaluate the error's effect on the jury's verdict. (*Rose v. Clark, supra*, 478 U.S. at p. 583.) We note in this regard that a *Chapman* harmless error analysis for instructional error typically includes review of the strength of the prosecution's case. (See, e.g., *Johnson v. United States, supra,* 520 U.S. at p. 470 [concluding that the trial court's failure to submit the question of materiality to the jury in a perjury case was harmless in light of the overwhelming and uncontroverted evidence supporting that element].) Indeed, the harmless error inquiry for the erroneous omission of instruction on one or more elements of a crime focuses *primarily* on the weight of the evidence adduced at trial. Under *Neder*, *supra*, 527 U.S. 1, such an error is deemed harmless when a reviewing court, after conducting a thorough review of the record, "concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence." (*Id*. at p. 17; see *People v. Mil* (2012) 53 Cal.4th 400, 417-419 [applying the same standard to evaluate the effect of the erroneous omission of instruction on two elements of an offense].)

The same harmless error analysis, however, is not appropriate in the present setting. *Neder* concluded that a reviewing court applying the *Chapman* harmless error standard to the erroneous failure to instruct on an element of the offense does not infringe on a defendant's constitutional rights by " 'becom[ing] in effect a second jury to determine whether the defendant is guilty.' [Citation.]" (*Neder, supra*, 527 U.S. at p. 19.) But if a reviewing court were to rely on its view of the overwhelming weight of the prosecution's evidence to declare there was no reasonable possibility that the jury based its verdict on a standard of proof less than beyond a reasonable doubt, the court would be in the position of expressing its own idea "of what a reasonable jury would have done. And when [a court] does that, 'the wrong entity judge[s] the defendant guilty.' [Citation.]" (*Sullivan,*

28

*supra*, 508 U.S. at p. 281.) No matter how overwhelming a court may view the strength of the evidence of the defendant's guilt, that factor is not a proper consideration on which to conclude that the erroneous omission of the standard reasonable doubt instruction was harmless under *Chapman*.

In sum, a reviewing court applying the *Chapman* standard to determine the prejudicial effect of the erroneous omission of the standard reasonable doubt instruction should evaluate the record as a whole — but not rely upon its view of the overwhelming weight of the evidence supporting the verdict — to assess how the trial court's failure to satisfy its constitutional obligation to instruct on the prosecution's burden of proof beyond a reasonable doubt affected the jury's determination of guilt. If it can be said beyond a reasonable doubt that the jury must have found the defendant's guilt beyond a reasonable doubt, the error is harmless. If the reviewing court cannot draw this conclusion, reversal is required.

### iii. The erroneous omission of the standard reasonable doubt instruction was harmless beyond a reasonable doubt in this case

The Court of Appeal in the present case was not convinced beyond a reasonable doubt that the erroneous omission of the standard reasonable doubt instruction was harmless as to the gang offense count. We reach a different conclusion. For the reasons discussed *post*, we conclude that in light of a number of distinct features revealed by the record in this case, there is no *reasonable* possibility that the jury failed to apply the reasonable doubt standard when it found defendant guilty of the gang offense.

It is not reasonably possible, given the instructions associated with the murder count, that the jury would have thought that the prosecutor had no burden of proof with regard to the gang offense charge, or that a standard other than beyond a reasonable doubt applied. The court gave nine instructions in connection with the murder count that, taken together, amply conveyed that the prosecutor

must prove beyond a reasonable doubt each element of the murder charge or its lesser included offenses, including the voluntary manslaughter offense of which defendant was convicted, as well as the elements of the street gang and firearm sentencing enhancement allegations associated with that count. Significantly, none of the court's instructions at trial referred to a lesser standard of proof such as preponderance of the evidence or clear and convincing evidence. (Cf. *Flores, supra*, 147 Cal.App.4th at p. 213, fn. 13 [finding the erroneous omission of CALJIC No. 2.90 not harmless in part because the jury was instructed on lesser standards in connection with the statute of limitations allegations and the requirement that the victim's testimony be corroborated].) We find it unrealistic, in light of the given instructions, that the jurors would have believed the prosecution was required to prove defendant's guilt of murder or its lesser offenses beyond a reasonable doubt but that it had no burden, or a burden less than beyond a reasonable doubt, to prove his guilt of the gang offense.

We drew a similar inference in a different context in *People v. Cowan* (2010) 50 Cal.4th 401. In that case, there was some possibility that during penalty phase deliberations, the jurors may have been led to believe that they could consider as a factor in aggravation evidence of a murder on which they had failed to reach a verdict during the guilt phase. (*Id*. at p. 492.) On appeal, the defendant claimed that the court committed prejudicial error at the penalty phase by failing to instruct on reasonable doubt in connection with the murder. (*Id*. at p. 489.) The record showed that although the jurors had been instructed pursuant to CALJIC No. 8.87 that they could consider the defendant's commission of three specified prior criminal acts as an aggravating circumstance if they were convinced beyond a reasonable doubt that the criminal acts had occurred, the jurors were not instructed that they could consider evidence of the prior murder as an aggravating circumstance only if they were convinced beyond a reasonable doubt that the

30

defendant had committed it. (*Cowan, supra,* at pp. 488-489.) We concluded, however, that even if instructional error occurred, there was no reasonable possibility that the error had affected the penalty verdict because, in relevant part, we found it "extremely unlikely" that any of the jurors would have believed they could consider the murder as an aggravating circumstance without first having been convinced beyond a reasonable doubt that the defendant committed it. (*Id.* at p. 492.) As we explained, "the most logical response to the absence of a specific instruction would have been to conclude that the . . . murder was subject to the same reasonable doubt standard as the other criminal activity included in the instruction . . . ." (*Ibid.*) We further observed that nothing in counsel's closing arguments would have misled the jury regarding the applicability of the reasonable doubt standard because neither party mentioned the murder. (*Ibid.*)

Likewise here, we find "the most logical response" by the jury to the absence of instruction specifically linking the reasonable doubt standard to the gang offense count would have been to conclude that a guilty verdict on that charge was subject to the same reasonable doubt standard that had been described in the court's instructions on murder, the lesser offenses, and the sentencing allegations. We further note that neither the prosecutor nor defense counsel referred to the standard of proof during closing remarks. As in *Cowan*, nothing in counsel's arguments would have misled the jury to believe it should adjudge defendant's guilt of the gang count under a standard of proof less than beyond a reasonable doubt.

The instructions given to the jury here, which related the reasonable doubt standard to the charge of murder and its lesser included offenses, also distinguish the present case from *Vann, supra,* 12 Cal.3d 220, and the line of Court of Appeal decisions that have found the erroneous omission of the standard reasonable doubt instruction to be prejudicial under *Chapman, supra,* 386 U.S. 18. In each of those

31

cases, as previously discussed, the court's instructions explained specific applications of the reasonable doubt standard to certain evidentiary and procedural determinations. In some cases, the instructions connected the reasonable doubt standard to lesser included offenses of which the defendant was not convicted. In no case, however, did the court's instructions convey that the prosecution bore the burden of proving guilt of any of the crimes of which the defendant was convicted. A reviewing court understandably would find it difficult under these circumstances to conclude beyond a reasonable doubt that the jury understood the reasonable doubt standard applied more generally to their determination of guilt on the charged offenses. (See *Flores, supra*, 147 Cal.App.4th at p. 216.)

By contrast in this case, the jury was informed through a number of predeliberation instructions that to convict defendant of the charged murder or any of its lesser included offenses, it must find him guilty of the offense beyond a reasonable doubt. We find it unrealistic to conclude that the jury would not have understood that the prosecution bore the same burden of proving defendant's guilt beyond a reasonable doubt with respect to the gang offense. Further, we find it unreasonable to say that the jury would have divined a different standard of proof or ignored one entirely with respect to the gang offense.

The Court of Appeal below arrived at the opposite conclusion, finding that the instructions on the murder charge and its lesser offenses and associated sentencing allegations suggested "more than a reasonable possibility" that the omission of the standard reasonable doubt instruction contributed to the jury's verdict of guilt on the gang offense charge. The Court of Appeal found it significant that the jury had been instructed that the prosecution must prove beyond a reasonable doubt each element of the gang allegation attached to the murder count, and returned a not true finding on that allegation, but that it had convicted defendant of the gang offense.

32

We are not persuaded by the Court of Appeal's reasoning because the record discloses a different explanation for the alleged inconsistency in the jury's verdicts on the gang allegation and the gang offense count. The jury was instructed that to find the gang allegation true, it had to find defendant committed "the crime charged" for the benefit of a criminal street gang and that "that crime" was committed with the specific intent to promote criminal conduct by gang members. During closing argument, the prosecutor emphasized to the jury that "the gang allegation only applies to murder. *If you find him guilty of manslaughter, you don't worry about the gang allegation*." (Italics added.) As noted, the jury acquitted defendant of murder and found him guilty of voluntary manslaughter. In accordance with those verdicts and the prosecutor's argument, the jury returned the verdict form finding that defendant, "in the commission of the offense charged in count 1 . . . did not commit said crime" for the benefit of a criminal street gang. We conclude that on this record, the jury's not true finding on the gang allegation does not suggest a reasonable possibility that its verdict of guilt on the gang offense count was based on a standard of proof less than beyond a reasonable doubt.

Although of lesser significance than the instructions given at trial and the jury's verdicts in the case, the court's remarks and questions to prospective jurors provide some support for our conclusion that there is no reasonable possibility that the jury's verdict on the gang count was not based on a finding of guilt beyond a reasonable doubt. In its introductory comments, the court read to the prospective jurors the standard reasonable doubt instruction (CALJIC No. 2.90), and throughout the next two days of the jury selection process, the court continued to reference and clarify the reasonable doubt standard. For example, the court contrasted the prosecution's burden of proof beyond a reasonable doubt with the lesser standards of proof that applied in other settings. Specifically, the court

33

explained that liability in a civil case is based on a preponderance of the evidence, where "you evaluate the evidence and weigh one side against the other. . . . That is the lowest standard in the law. . . . That's not our standard." The court also mentioned the probable cause standard and the standard of clear and convincing evidence, but reiterated, "That's not our standard. [¶] Our standard is the highest standard of them all, beyond a reasonable doubt. [Of] all the levels, all the standards, that's the highest." On the third and final day of jury selection, the court reiterated the differences between the reasonable doubt standard and the lesser standards of proof, emphasizing again that the latter did not apply to the present case.

The court also repeatedly explained the connection between the charged crimes and the reasonable doubt standard. In the court's introductory remarks, it informed the prospective jurors that "each crime has certain ingredients. We call those elements. To find one guilty of a crime, whatever it may be, could be shoplifting, could be any crime, but to find him guilty of any crime you must be convinced beyond a reasonable doubt as to the elements one, two, three, whatever the number is, as to those elements. Okay?" The court later explained to the prospective jurors that "we have three alleged crimes, elements to all of them. You will be getting the proper reading of all the elements in the jury instructions, and if you are not convinced beyond a reasonable doubt as to any one or more of those elements, you must vote not guilty." With regard to the gang offense charge specifically, the court apprised the prospective jurors of the elements of that charge. It then remarked that "the fact that you have a group that does things together does not mean necessarily it is a criminal street gang. . . . [Y]ou are going to have to be convinced . . . beyond a reasonable doubt [of the] various elements that we'll give to you." The court repeated the point toward the end of jury selection, asking prospective jurors collectively whether everyone could

34

accept that in order to find defendant guilty of the gang offense, each must be satisfied beyond a reasonable doubt that all the elements have been proved.

During questioning of the prospective jurors, which was conducted in front of the entire venire, the court continued to impress upon them the required burden of proof. The court asked certain prospective jurors individually whether they understood and accepted the rule that the burden of proving defendant's guilt was on the People. The court elicited affirmative responses both individually from the prospective jurors who were being questioned and collectively from the entire venire. The court also explained to prospective jurors that "[i]f you are not convinced . . . beyond a reasonable doubt as to any one element, you must find not guilty." It then inquired of individual prospective jurors and the group as a whole whether they "promised to vote not guilty" if not convinced beyond a reasonable doubt as to any one element. The court later asked prospective jurors, conversely, whether they could accept that to find guilt they must be convinced beyond a reasonable doubt "that all the elements of all the crimes have been met."

Thus, in this case, the court undertook extensive effort during jury selection to impress upon the prospective jurors the meaning, application, and magnitude of the beyond-a-reasonable-doubt standard of proof, and it painstakingly elicited from the prospective jurors their understanding and acceptance of that principle. The trial court did much more than simply read the standard instruction to the prospective jurors, or refer in passing to the presumption of innocence and the standard of proof when questioning a single prospective juror. The circumstances here are, therefore, distinguishable from those in *Flores, supra*, 147 Cal.App.4th 199, *Crawford, supra*, 58 Cal.App.4th 815, and *Phillips, supra*, 59 Cal.App.4th 952.

We note furthermore that none of the predeliberation instructions that the court gave to the jury conflicted with, or prevented the jurors from relying on, the

court's repeated and detailed explanations during jury selection that the prosecution must prove every element of each offense — including the gang offense — beyond a reasonable doubt. At the outset of trial, the trial court informed the jury that it would give additional instructions on the law at the conclusion of the case. It further admonished, however, that "all of the Court's instructions, whether given before, during, or after the taking of testimony, are of equal importance." In this respect, the present case differs from *Vann, supra*, 12 Cal.3d 220, in which the trial court ended its predeliberation instructions by informing the jurors that they " 'have been instructed on all the rules of law that may be necessary for you to reach a verdict.' " (*Id*. at p. 227, fn. 6.) We found in *Vann* that the "net effect" of these instructions was to suggest to the jurors that the predeliberation instructions were "a self-contained, complete statement of the law they were to follow." (*Ibid*.) Here, by contrast, the trial judge instructed the jury only that it must "accept and follow the law as I state it to you." (See CALJIC No. 1.00.) Nothing in this directive would have led the jurors to believe they must ignore the court's explications of the prosecution's burden of proof given during jury selection.

The trial court's failure to instruct the jury on the prosecution's burden of proving guilt beyond a reasonable doubt is a serious error that often may amount to a federal due process violation. As demonstrated by the prior decisions, in those instances in which this instructional omission constitutes error of federal constitutional dimension, the error frequently will not be harmless under the *Chapman* harmless error standard of review. In the present matter, however, a different conclusion is warranted: Given the entire record in this case, and in particular the predeliberation instructions that expressly and directly connected the reasonable doubt standard to the charged murder and its lesser included offenses, including the voluntary manslaughter offense of which defendant was convicted,

we conclude that it is not reasonably possible that the jury would have believed that a guilty verdict on those crimes must be based on a finding of guilt beyond a reasonable doubt but that some lesser standard of proof, or no standard at all, applied to the gang offense count. We can say beyond a reasonable doubt on the record before us that the jury's verdict on the gang offense charge must have been based on a finding of guilt beyond a reasonable doubt. The court's erroneous failure to inform the jury in its predeliberation instructions that the prosecution bore the burden of proving the gang offense beyond a reasonable doubt therefore was harmless beyond a reasonable doubt.

### D. Definition of reasonable doubt

The trial court's five predeliberation instructions relating to the murder charge and its lesser included offenses, coupled with CALJIC No. 1.00, the standard instruction directing the jury to determine defendant's guilt based on the evidence received at trial, covered the two interrelated principles embodied in the standard reasonable doubt instruction, that is, the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt as to that count. Missing from the predeliberation instructions, however, was a *definition* of reasonable doubt.[14]

The failure to define the term "reasonable doubt" does not amount to federal constitutional error. As the high court explained in *Victor,* "the Constitution

---

[14]  CALJIC No. 2.90 states: "Reasonable doubt . . . is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge." (CALJIC No. 2.90.) CALCRIM No. 220 defines the reasonable doubt standard of proof in positive terms, explaining that "[p]roof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true."

neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." (*Victor, supra,* 511 U.S. at p. 5.)

The court's omission of a definition of reasonable doubt, however, does constitute an error under state law. By their terms, sections 1096 and 1096a clearly contemplate that a trial court will provide a definition of the term "reasonable doubt" for the jury. Section 1096a provides in relevant part that when the court instructs the jury in a criminal case, it "may read to the jury section 1096 . . . and no further instruction . . . defining reasonable doubt need be given." The legislative history of sections 1096 and 1096a indicates that their enactment was prompted by numerous reversals of criminal convictions resulting from trial courts instructing juries with erroneous definitions of reasonable doubt. (See *People v. Brigham* (1979) 25 Cal.3d 283, 293-295 (conc. opn. of Mosk, J.); see also *People v. Garcia* (1975) 54 Cal.App.3d 61, 63-66 [section 1096a was intended to eliminate claims of error based on a trial court's departure from the legislatively-approved definition of reasonable doubt].) A trial court's statutory obligation to instruct the jury on the definition of reasonable doubt has been confirmed by this court on a number of occasions. (See, e.g., *People v. Brigham, supra,* at pp. 290-292; *id*. at pp. 292-316 (conc. opn. of Mosk, J.) [recognizing that the governing California statutes require a trial court to define reasonable doubt for the jury but urging the Legislature to amend the statutes to delete any definition of reasonable doubt]; *People v. Freeman, supra,* 8 Cal.4th at p. 504 & fn. 9 [cautioning trial courts not to modify the standard reasonable doubt instruction, which tracks the language of section 1096, beyond the changes set forth in the opinion, and observing that more extensive changes to the standard instruction, "such as those discussed in the concurring opinions," "must be left to others"]; see also *People v. Freeman, supra,* at p. 526 (conc. opn. of Mosk, J.) [expressing the view that, in light of constitutional due process requirements, trial courts should be prohibited

38

from attempting any instructional definition of proof beyond a reasonable doubt]; *People v. Freeman, supra,* at pp. 526-531 (conc. opn. of George, J.) [agreeing with the majority opinion's analysis of sections 1096 and 1096a, endorsing its request that the Legislature address "numerous concerns regarding the clarity of California's standard reasonable doubt instruction," and recommending "that the Legislature amend Penal Code sections 1096 and 1096a to provide a more comprehensible and helpful instruction to guide California jurors in future criminal cases"].)  Accordingly, the trial court's failure to give CALJIC No. 2.90 or CALCRIM No. 220, or to otherwise define reasonable doubt for the jury in this case, constituted state law error as to both the murder count and the gang offense count.

As previously discussed, such a state law error is subject to harmless error review under the standard in *People v. Watson, supra*, 46 Cal.2d 818.  (*People v. Mayo, supra*, 140 Cal.App.4th at pp. 550-551.)  Having reviewed the record in accordance with that harmless error standard, we conclude that there is no reasonable probability that the outcome would have been more favorable for defendant had the court provided in its predeliberation instructions a definition of the reasonable doubt standard of proof.

Nothing in the record suggests that the jury may have been confused regarding the meaning of reasonable doubt.  During its deliberations, the jury sent several notes to the court asking questions and seeking to rehear testimony.  But the jury did not request clarification of the reasonable doubt principle "as it surely would have done had it been confused as to the meaning of [that term]."  (*People v. Holt* (1997) 15 Cal.4th 619, 685; cf. *People v. Cowan, supra*, 50 Cal.4th at p. 495 [relying on similar grounds to find harmless the trial court's erroneous failure to redefine the reasonable doubt standard at the penalty phase of a capital trial]; *People v. Chatman* (2006) 38 Cal.4th 344, 408-409 [same].)  Furthermore,

because neither the prosecutor nor defense counsel referred to the standard of proof during their closing remarks, nothing in their arguments invited the jury to apply a standard of proof less than beyond a reasonable doubt, or no standard at all. This is not a case like *Phillips, supra*, 59 Cal.App.4th 952, in which opposing counsel's arguments disagreeing about the definition of reasonable doubt were "more apt to confuse than to enlighten the jurors," who had not been given the standard reasonable doubt instruction. (*Id*. at p. 958 [concluding that the jurors were likely to be confused "whether to even apply reasonable doubt as the People's burden of proof"].) The jury's verdicts in this case, acquitting defendant of murder and convicting him of voluntary manslaughter instead, further suggest that the jury understood the prosecution's heavy burden of proving guilt beyond a reasonable doubt, conscientiously adjudged the evidence in light of that standard of proof, and determined that the prosecution had failed to carry its burden of proof as to the greater offense but not as to the lesser.

We can infer moreover that the jury was not left to guess as to the meaning of reasonable doubt because, as already noted, the record shows that the court gave the definition when it read CALJIC No. 2.90 to the entire panel of prospective jurors, and repeatedly explained the standard instruction's principles during the three days of jury selection. Although not sufficient in itself to relieve the trial court of its obligation to define reasonable doubt for the sworn jurors during trial (and thus the court's omission of the definition in the predeliberation instructions constituted state law error), the court's remarks to prospective jurors can inform the harmless error analysis and further add some support to our conclusion that there is no reasonable probability that defendant would have obtained a more favorable outcome had the court included the standard reasonable doubt instruction or otherwise defined reasonable doubt during its predeliberation instructions to the jury. (See *People v. Mayo, supra*, 140 Cal.App.4th at p. 552

40

[relying in part on the court's remarks during jury selection to find the court's omission of CALJIC No. 2.90 from the predeliberation instructions to be harmless under *Watson*]; cf. *Elguera, supra*, 8 Cal.App.4th at p. 1221 [having heard CALJIC No. 2.90 during jury selection and indicating individually that they understood it, the seated jurors were not left ignorant as to the standard reasonable doubt instruction's basic principles].)

On this record, we conclude that there is no reasonable probability that the outcome of this trial, in which the jury found defendant guilty of voluntary manslaughter and the gang offense, would have been more favorable to defendant had the trial court defined the reasonable doubt standard of proof in its predeliberation instructions.

## III. CONCLUSION

For the reasons discussed above, we reverse the judgment of the Court of Appeal insofar as it reversed defendant's conviction of active participation in a criminal street gang. In all other respects, the judgment is affirmed.

CANTIL-SAKAUYE, C. J.

WE CONCUR:

BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.

41

**CONCURRING AND DISSENTING OPINION BY KENNARD, J.**

Defendant was charged with murder (Pen. Code, § 187) and actively participating in a criminal street gang (Pen. Code, § 186.22, subd. (a) (the gang offense)). At trial, the court failed to give the jury the standard instruction on the prosecution's burden of proving guilt "beyond a reasonable doubt." The jury found defendant guilty of voluntary manslaughter (a lesser offense necessarily included in the charge of murder), and of the gang offense.

With regard to the voluntary manslaughter conviction, the majority concludes that the absence of a reasonable doubt instruction did not violate defendant's right to due process under either the Fifth or the Fourteenth Amendment to the federal Constitution. The majority explains that other instructions pertaining to the murder charge made it clear that the jury had to apply the concept of reasonable doubt. I agree.

With respect to the conviction for the gang offense, the majority holds that the trial court's failure to instruct the jury on reasonable doubt violated defendant's federal due process rights because, unlike the murder charge, no other instructions told the jury to apply the standard of reasonable doubt to the gang offense. I agree. But I do not share the majority's view that the error did not prejudice defendant.

1

In *Chapman v. California* (1967) 386 U.S. 18, the United States Supreme Court held that any violation of a criminal defendant's rights under the federal Constitution is harmless only if the prosecution can "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Id.* at p. 24.) According to the majority here, that standard was satisfied. For the reasons given in Justice Liu's concurring and dissenting opinion, however, I am not convinced beyond a reasonable doubt that the jury here applied the correct standard of proof in determining defendant's guilt of the gang offense. Therefore, I would affirm the Court of Appeal's judgment reversing defendant's conviction for the gang offense.

As to whether failure to instruct on reasonable doubt can ever be harmless (see conc. & dis. opn. of Liu, J., *post*, pp. 3, 21), I agree with the majority that such an error is harmless "[i]f it can be said beyond a reasonable doubt that the jury must have found the defendant's guilt beyond a reasonable doubt." (Maj. opn., *ante*, at p. 29.)


                                        KENNARD, J.

2

**CONCURRING AND DISSENTING OPINION BY LIU, J.**

A fundamental tenet of our criminal law is that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (*In re Winship* (1970) 397 U.S. 358, 364.)  Accordingly, the jury verdict required under the Sixth Amendment to convict a person of a criminal offense "is a jury verdict of guilty beyond a reasonable doubt." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 278 (*Sullivan*).)  The trial court has a constitutional duty to so instruct the jury.  (*Id.* at p. 281.)

The trial court in this case failed to give a standard reasonable doubt instruction that would have apprised the jury that "[a] defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt." (CALJIC No. 2.90; see also CALCRIM No. 2.20 (2006 rev.).)  I agree with today's opinion that despite this omission, the trial court did not commit federal constitutional error requiring defendant's voluntary manslaughter conviction to be overturned.  As the court explains, the trial court repeatedly mentioned the reasonable doubt standard when instructing the jury on the elements of murder and its lesser included offenses, including voluntary manslaughter.  The jury was clearly informed that in order to convict defendant of murder or voluntary manslaughter, the

1

prosecutor had to prove all the elements of those offenses beyond a reasonable doubt. I also agree with the court that the failure to define reasonable doubt in this case does not require reversal of that conviction.

Furthermore, I agree with today's holding that the trial court committed federal constitutional error in failing to instruct the jury that defendant could not be convicted of active participation in a criminal street gang in violation of Penal Code section 186.22 (all statutory references are to this code) unless the prosecution had proven his guilt beyond a reasonable doubt. However, as explained below, I do not agree that the error was harmless.

Until today, no California case had ever held or even suggested that despite a trial court's failure to instruct the jury with a standard reasonable doubt instruction or some other instruction connecting the reasonable doubt standard to a charged offense, an appellate court can still be certain beyond a reasonable doubt that the jury understood its obligation with respect to that offense. California precedent is uniformly to the contrary; every case to have found inadequate instruction on the reasonable doubt standard has found such error to warrant reversal. The uniformity of this precedent reflects the firm and justified conviction of our courts that " '[n]o instruction could be more vital' " (*People v. Vann* (1974) 12 Cal.3d 220, 227 (*Vann*)) than one that assures a defendant "the most elementary and fundamental right provided by our system of justice, a jury verdict of guilty beyond a reasonable doubt" (*People v. Crawford* (1997) 58 Cal.App.4th 815, 823 (*Crawford*)).

Today's decision is an unwarranted departure. The court correctly concludes that the trial court's omission of the standard reasonable doubt instruction was federal constitutional error because none of the given instructions, singly or collectively, "otherwise cover[ed] the requirement that the prosecution prove defendant's guilt of the gang offense beyond a reasonable doubt." (Maj. opn., *ante*, at p. 20.) But the court nevertheless believes "we can say beyond a reasonable doubt on the record

2

before us that the jury's verdict on the gang offense charge must have been based on a finding of guilt beyond a reasonable doubt." (*Id.* at p. 37.)  This assertion is frankly mystifying.  It is inconsistent with the court's own rationale for finding federal constitutional error.  It disregards precedent strongly pointing the other way.  And it fails to recognize that a perfectly reasonable juror could have applied the reasonable doubt standard only to the murder charge and not to the gang offense *exactly as the trial court instructed*.  Moreover, the court finds harmless error even though no party asked us to decide that issue; the Attorney General conceded in her answer brief that the instructional error on the gang offense required reversal.  Even assuming the possibility of a rare case in which failure to properly instruct on the reasonable doubt standard does not prejudice a criminal defendant, this is not that case.  Because the court has erroneously and unnecessarily reached out to find the instructional error on the gang offense harmless, I respectfully dissent from that portion of today's opinion.

**I.**

To put into perspective the novelty of the court's finding of harmless error, it is helpful to begin with some background law.  In *Sullivan*, *supra*, 508 U.S. 275, the United States Supreme Court held that a trial court's misleading and erroneous reasonable doubt instruction requires reversal of the conviction.  The high court explained that "where the instructional error consists of a misdescription of the burden of proof," the error "vitiates *all* the jury's findings." (*Id.* at p. 281.)  As a result, "[a] reviewing court can only engage in pure speculation — its view of what a reasonable jury would have done.  And when it does that, 'the wrong entity judge[s] the defendant guilty.' [Citation.]" (*Ibid.*)

In the present case, the trial court did not give an incorrect or misleading statement of the reasonable doubt instruction.  Instead, the trial court failed to give the standard reasonable doubt instruction.  The issue before us is whether this omission was federal constitutional error and, if so, whether reversal is warranted.  Until today,

3

all California courts that have considered the matter have found that where the trial court has omitted the standard reasonable doubt instruction, and where no other instructions connect the reasonable doubt standard to the charged offense, the omission is reversible error. Although some courts have found the error to be prejudicial under harmless error analysis while others have deemed it structural error, in reality the reasoning and results have been virtually the same.

In *Vann*, *supra*, 12 Cal.3d 220, we held that the trial court's omission of the standard reasonable doubt instruction was prejudicial error. We rejected the prosecution's argument that the reasonable doubt language in the circumstantial evidence instruction and the good character instruction would necessarily be understood by a jury to generally establish the reasonable doubt standard of proof. (*Id.* at pp. 226–227.) The court also explained that the trial court's pre-empanelment instructions to prospective jurors did not cure the error, noting a 16-day gap between the reasonable doubt instruction given to prospective jurors and the end of trial. (*Id.* at p. 227, fn. 6). Similarly, statements of counsel did not cure the error because "the court made it clear that the jurors were to follow the law as explained by the court, and were not to follow rules of law stated in argument but omitted from the instructions." (*Ibid.*) The court thus concluded under *Chapman v. California* (1967) 386 U.S. 18 that the error was not harmless beyond a reasonable doubt. (*Vann*, at p. 228).

*People v. Elguera* (1992) 8 Cal.App.4th 1214 (*Elguera*) similarly involved an omission of the standard reasonable doubt instruction from the trial court's predeliberation charge to the jury. The trial court had given the standard instruction to prospective jurors at the start of jury selection; the reasonable doubt standard was repeated during examination of prospective jurors, and each juror said he or she understood it; the circumstantial evidence instruction given to the jury before deliberation referred to the reasonable doubt standard; and the

4

prosecutor and defense counsel mentioned the reasonable doubt standard at least eight times in argument to the jury.  (*Id.* at p. 1221.)  Still, the Court of Appeal was "unable to declare [itself] convinced beyond a reasonable doubt the error had no effect on the verdict." (*Id.* at p. 1222.)  Even though the entire trial, including jury selection, occurred in a single day, the court explained that "the instruction was given not to actual jurors, but to prospective jurors who at the time did not know whether they would ultimately serve in the case.  As a result, the members of the panel could well have viewed the court's remarks as hypothetical and thus have failed to give the instruction the same focused attention they would have had they been impaneled and sworn." (*Ibid.*)  "[B]ecause the [trial] court made no reference to . . . the general reasonable doubt standard with its charge to the jury after presentation of the evidence, any intellectual awareness the jurors had that the reasonable doubt standard applied may not have been accompanied by the sense of centrality and importance the instruction should carry." (*Ibid.*)

In *People v. Flores* (2007) 147 Cal.App.4th 199 (*Flores*), the trial court did not give the standard reasonable doubt instruction, but it did mention the reasonable doubt standard in instructions pertaining to proof by circumstantial evidence, defendant's choice not to testify, special statute of limitations findings, and allegations that the defendant committed offenses against more than one victim. (*Id.* at pp. 216–217.)  As to each of those instructions, the court refused to "presume that a reasonable doubt instruction given in a specific context . . . will necessarily be understood by all of the jurors to apply generally to their determination of the defendant's guilt on all of the charged offenses." (*Id.* at p. 216.)  The trial court also mentioned the reasonable doubt standard during jury selection.  But, as in *Vann* and *Elguera*, the court found it "unreasonable to expect prospective jurors, who have yet to be empanelled and sworn as actual jurors in the trial, to give the necessary attention and weight to instructions given by a trial

5

court during jury selection." (*Id.* at p. 215.) In addition, the court explained that the prosecutor's discussion of the reasonable doubt standard during closing argument did not effectively inform the jury of that standard in light of the trial court's instruction that the jury must follow the law as stated by the court. (*Id.* at p. 218.) "In short," the court concluded, "we cannot say the trial court's error was harmless beyond a reasonable doubt." (*Id.* at p. 219.)

In *Crawford*, *supra*, 58 Cal.App.4th 815, the Court of Appeal held that the failure to give a standard reasonable doubt instruction was structural error. (*Id.* at pp. 821–823.) But the court went on to explain that even if harmless error analysis applied, the instructional omission was not harmless. (*Id.* at pp. 824–825 [references to proof beyond a reasonable doubt in pre-empanelment instructions and in instructions on specific matters did not cure the failure to give the standard instruction].) Similarly, in *People v. Phillips* (1997) 59 Cal.App.4th 952, the court held that omission of the standard reasonable doubt was structural error, while also rejecting the prosecution's contention that arguments of counsel and other instructions relating to reasonable doubt rendered the omission harmless. (*Id.* at pp. 956–958.)

There is one case in which a court found that omission of the standard reasonable doubt instruction was not prejudicial error and, indeed, not federal constitutional error at all. In *People v. Mayo* (2006) 140 Cal.App.4th 535, the Court of Appeal held that omission of the standard instruction does not constitute federal constitutional error if the jury is otherwise instructed on the requirement of proof beyond a reasonable doubt in connection with the charged offense. (*Id.* at pp. 548–549.) In *Mayo*, a murder case, the trial court failed to give the standard instruction, but other instructions made clear that as to the murder charge and lesser included offenses, the prosecution had the burden of proving each element beyond a reasonable doubt. (*Id.* at pp. 545–546.) The court distinguished *Vann*, *Crawford*, *Phillips*, and

6

*Elguera* on the ground that the instructions in those cases "did 'fall far short' of informing the jury it had to acquit unless it found each and every element of the charged offense beyond a reasonable doubt." (*Id.* at p. 546.) *Mayo* makes clear that despite a trial court's failure to give a standard reasonable doubt instruction, a defendant has not been denied "the right to a jury verdict of guilt beyond a reasonable doubt" (*Sullivan*, *supra*, 508 U.S. at p. 281) — and no federal constitutional error has occurred — when the instructions given by the trial court otherwise informed the jury of its obligation to apply the reasonable doubt standard to the charged offense.

From this review of the case law, two points emerge. First, California courts have not been entirely consistent in their doctrinal approach to analyzing the significance of a trial court's omission of the standard reasonable doubt instruction. *Crawford* and *Phillips* said the omission is structural error. *Vann*, *Elguera*, and *Flores* said the omission itself is federal constitutional error, and those courts then asked whether the error was prejudicial by examining whether the instructions given by the trial court or the arguments of counsel adequately informed the jury of the correct standard of proof for the charged offense. *Mayo* said that omission of the standard reasonable doubt instruction is not, in and of itself, federal constitutional error; it is only error when the instructions given by the trial court do not otherwise inform the jury that the prosecution must prove each element of the charged offense beyond a reasonable doubt.

Today's opinion clarifies "the proper inquiry with regard to determining the federal constitutional implications of the trial court's failure to include the standard reasonable doubt instruction in its predeliberation instructions to the jury." (Maj. opn., *ante*, at p. 14.) The court says "the omission of the standard reasonable doubt instruction will amount to a federal due process violation when the instructions that were given by the court failed to explain that the defendants could not be convicted 'unless each element of the crimes charged was proved to the jurors' satisfaction

7

beyond a reasonable doubt.' (*Vann*, *supra*, 12 Cal.3d at p. 227.)  When the trial court's instructions otherwise cover this constitutional principle, the failure to instruct with the standard reasonable doubt instruction does not constitute federal constitutional error." (Maj. opn., *ante*, at p. 14.)  Thus, consistent with *Mayo*, the court today holds that omission of the standard reasonable doubt instruction does not itself constitute federal constitutional error.  A reviewing court must ask whether "the trial court's instructions otherwise cover this constitutional principle." (*Ibid.*)  Only when the trial court's instructions do not otherwise connect the reasonable doubt standard to the charged offense does omission of the standard instruction amount to federal constitutional error.

In light of today's doctrinal clarification, it is readily apparent that most of the analysis that the cases above had categorized as "harmless error" inquiry — in particular, whether pre-empanelment or other instructions given by the trial court compensated for the omission of the standard reasonable doubt instruction — is now properly understood as an inquiry into whether a federal constitutional error occurred at all.  Under today's decision, a proper finding of federal constitutional error subsumes a finding that other instructions given by the trial court did not adequately convey to the jury the applicability of the reasonable doubt standard to the charged offense.  Importantly, as discussed more fully below, this means that even if such error is amenable to harmless error analysis, a finding of error will almost invariably lead to reversal.  That is because there is very little that other components of a trial, such as the arguments of counsel, can do to compensate for the failure of a trial court's instructions, singly and collectively, to inform the jury on the correct standard of proof for the charged offense.

A second observation from the prior cases is that despite varying doctrinal approaches, and despite factual differences from case to case, our courts have been consistently and highly skeptical of arguments that purport to show why omission of

8

the standard reasonable doubt instruction does not warrant reversal. No court has found much relevance in statements of counsel, given the obvious authority of the trial judge in the courtroom. No court has put much stock in pre-empanelment instructions, even when they repeatedly mention the reasonable doubt standard, because prospective jurors who do not know whether they will actually serve on a jury cannot realistically be thought to pay focused attention to the trial court's instructions, and because the lapse of time between jury selection and deliberation erodes any impact such instructions might have. In addition, no court has found references to the requirement of proof beyond a reasonable doubt in other predeliberation instructions to be an adequate substitute for the standard instruction, unless those instructions expressly connect the reasonable doubt standard to the charged offense, as in *Mayo*. In sum, no California case has ever held that a trial court's failure to give the standard reasonable doubt instruction or any other instruction connecting the requirement of proof beyond a reasonable doubt to the charged offense constitutes anything but reversible error.

Against this landscape of precedent, it is no wonder that the Attorney General's answer brief on the merits said she "acknowledges that the instructions did not adequately convey the concept of reasonable doubt to the jury with regard to the street terrorism conviction, and is not challenging the reversal of that count." Yet this court, on its own initiative, has decided to break new ground by finding the instructional error harmless. This conclusion, as I now explain, is contrary to precedent, common sense, and other parts of this court's own opinion.

## II.

At the close of evidence and argument in this case, the trial court first instructed the jurors with CALJIC No. 1.00, which states in part: "You have heard all the evidence . . . and now it is my duty to instruct you on the law that applies to this case. You will have these instructions in written form in the jury room to

9

refer to during your deliberations."  The instruction further stated:  "You must accept and follow the law as I state it to you, regardless of whether you agree with it."  The trial court's predeliberation instructions then included nine instructions related to the murder count and lesser included offenses and enhancements, each of which mentioned the requirement of proof beyond a reasonable doubt.  The trial court did not give the jury a reasonable doubt instruction on the gang offense, nor did the trial court give the standard reasonable doubt instruction.

## A.

Applying the proper inquiry for determining whether the trial court's omission of the standard reasonable doubt instruction amounted to federal constitutional error, the court holds that no error occurred "with regard to the voluntary manslaughter conviction because the court's instructions on murder and its lesser included offenses clearly connected the reasonable doubt standard to the voluntary manslaughter offense." (Maj. opn., *ante*, at p. 18.)  The court then says:  "The same cannot be said concerning the count charging defendant with active participation in a criminal street gang in violation of section 186.22, subdivision (a), however, because neither the instruction on the elements of that offense nor any other instruction given by the court connected the reasonable doubt standard of proof to that charge." (*Id.* at pp. 18–19.)

In support of the latter holding, the court observes that the instruction stating the elements of the gang offense "did not explain that the prosecution must prove each of those elements beyond a reasonable doubt." (Maj. opn., *ante*, at p. 19.)  In addition, "[t]he circumstantial evidence instruction did not adequately cover the principle that defendant could be convicted of the gang offense only if the prosecution proved his guilt of the gang offense beyond a reasonable doubt." (*Id.* at p. 20.)  Further, although the trial court mentioned the reasonable doubt standard in its instruction on the gang enhancement allegation, "the reference to the reasonable doubt standard was contained in an instruction concerning a sentencing allegation associated

10

with the murder charge, an entirely different count." (*Id.* at p. 19.) Indeed, none of the trial court's nine predeliberation instructions that specifically referred to the reasonable doubt standard connected that standard to the gang offense, for the court concludes that "the [trial] court's instructions did not otherwise cover the requirement that the prosecution prove defendant's guilt of the gang offense beyond a reasonable doubt." (*Id.* at p. 20.) Finally, in a footnote, the court adds that the trial court's pre-empanelment instructions to prospective jurors, which repeatedly mentioned the reasonable doubt standard, were not "an adequate substitute for the court's duty to instruct the jurors prior to deliberation on the principle of proof beyond a reasonable doubt." (*Id.* at p. 20, fn. 11.)

At this point in the analysis, the court has determined that neither the pre-empanelment instructions nor any other instructions given by the trial court adequately conveyed to the jury the applicability of the reasonable doubt standard to the gang offense. That is the basis of the court's finding of federal constitutional error. To the extent this instructional error is subject to harmless error analysis, one would expect such analysis to focus on whether aspects of the trial *other than instructions given by the trial court* effectively compensate for the inadequacy of the trial court's instructions. On the record before us, that inquiry would be short and simple. As the court acknowledges, the only potentially relevant circumstance is that "neither the prosecutor nor defense counsel referred to the standard of proof during closing remarks" and "nothing in counsel's arguments would have misled the jury to believe it should adjudge defendant's guilt of the gang count under a standard of proof less than beyond a reasonable doubt." (Maj. opn., *ante*, at p. 31.) That is true. But it is equally true that nothing in counsel's arguments would have led the jury to believe it should adjudge defendant's guilt of the gang count under the reasonable doubt standard. Counsel's silence can hardly render the instructional error harmless beyond a reasonable doubt.

11

The court correctly notes that the issue of reversibility in this context does not depend on the strength of the case against a defendant. (Maj. opn., *ante*, at pp. 28–29.) So what is left for the court to do in its harmless error analysis? Perplexingly, the court answers this question by focusing its harmless error analysis on a second look at whether the instructions given by the trial court adequately informed the jury of the reasonable doubt standard — *the same inquiry* the court posed earlier to determine whether the instructional omission amounted to federal constitutional error. Even more baffling, this "do-over" leads the court to a conclusion contrary to the one it reached just a few pages earlier.

First, the court says the "nine instructions in connection with the murder count" left no reasonable possibility that the jury failed to apply the reasonable doubt standard in finding defendant guilty of the gang offense. (Maj. opn., *ante*, at p. 29; see *id.* at p. 30 ["We find it unrealistic, in light of the given instructions, that the jurors would have believed the prosecution was required to prove defendant's guilt of murder or its lesser offenses beyond a reasonable doubt but that it had no burden, or a burden less than beyond a reasonable doubt, to prove his guilt of the gang offense."].) The court says these murder-related instructions "in particular" support a finding of harmless error. (*Id.* at p. 36.)

These statements take the reader by surprise in light of the court's prior conclusion that "the [trial] court's instructions did not otherwise cover the requirement that the prosecution prove defendant's guilt of the gang offense beyond a reasonable doubt." (*Id.* at p. 20.) How can the court say that the only "realistic" or "reasonably possible" inference from the murder-related instructions was that the reasonable doubt standard also applied to the gang offense when the court's finding of constitutional error rejects the necessity of that very inference? The court's harmless error analysis flies in the face of its earlier reasoning that the murder-related instructions were insufficient to convey the applicability of the reasonable doubt

12

standard to the gang offense because "the murder charge [was] an entirely different count." (*Id.* at p. 19.) The court provides no justification for retreating from its own recognition, supported by ample precedent, that "it cannot be presumed 'that a reasonable doubt instruction given in a *specific* context . . . will necessarily be understood by all of the jurors to apply *generally* to their determination of the defendant's guilt on the charged offenses.' " (*Id.* at p. 16, quoting *Flores*, *supra*, 147 Cal.App.4th at p. 216; see also *Vann*, *supra*, 12 Cal.3d at pp. 226–227; *Crawford*, *supra*, 58 Cal.App.4th at pp. 824–825; *Elguera*, *supra*, 8 Cal.App.4th at p. 1218.)

Second, the court notes that the trial court's pre-empanelment instructions to prospective jurors "repeatedly explained the connection between the charged crimes and the reasonable doubt standard." (Maj. opn., *ante*, at p. 34; see *id.* at p. 35 ["Thus, in this case, the court undertook extensive effort during jury selection to impress upon the prospective jurors the meaning, application, and magnitude of the beyond-a-reasonable-doubt standard of proof, and it painstakingly elicited from the prospective jurors their understanding and acceptance of that principle."].) But the court is aware that "no decision has viewed instructions and remarks at this stage of the proceedings as an adequate substitute for the court's duty to instruct the jurors prior to deliberation on the principle of proof beyond a reasonable doubt" and that substantial precedent has found it " 'unreasonable to expect prospective jurors . . . to give the necessary attention and weight to instructions given by a trial court during jury selection.' " (*Id.* at p. 20, fn. 11, quoting *Flores*, *supra*, 147 Cal.App.4th at p. 215; see also *Vann*, *supra*, 12 Cal.3d at p. 227, fn. 6; *Crawford*, *supra*, 58 Cal.App.4th at p. 824; *Elguera*, *supra*, 8 Cal.App.4th at p. 1217.)

In light of this precedent, the court attempts to finesse the relevance of the pre-empanelment instructions by saying they are "of lesser significance" than instructions given at trial but nonetheless "provide some support" for the court's finding of harmless error. (Maj. opn., *ante*, at p. 33.) But having concluded that

13

the same "extensive" and "painstaking" pre-empanelment instructions, along with the nine murder-related instructions that specifically mentioned reasonable doubt, do not show that the trial court's instructions "otherwise cover[ed] the requirement that the prosecution prove defendant's guilt of the gang offense beyond a reasonable doubt" (*id.* at p. 20 & fn. 11), how can the court now say that the pre-empanelment instructions "provide some support for our conclusion that there is no reasonable possibility that the jury's verdict on the gang count was not based on a finding of guilt beyond a reasonable doubt" (*id.* at p. 33)? I do not see how these two holdings can be reconciled. If it is " 'unreasonable to expect prospective jurors . . . to give the necessary attention and weight to instructions given by a trial court during jury selection' " (*id.* at p. 20, fn. 11), and if the unreasonableness of that expectation supports the court's finding of federal constitutional error, then why should remarks to prospective jurors now be regarded as a relevant factor, even of "lesser significance," in harmless error analysis? Given the 14-day gap between jury selection and deliberations in this case, it is questionable whether the jurors even recalled those remarks.

### B.

The obvious inconsistency between the court's harmless error analysis and its rationale for finding federal constitutional error reveals how mightily the court must strain to avoid a far more simple, straightforward, and legally supportable conclusion: It was reasonably possible that the jury did not apply the reasonable doubt standard in convicting defendant of the gang offense.

In light of the trial court's instructions and omissions, it is certainly possible, as the court posits, that a reasonable juror would have inferred that the reasonable doubt instruction given in connection with murder count also applied to the gang offense. But it is also possible that a reasonable juror, noting the discrepancy, would have concluded that the reasonable doubt standard did not

14

apply to the gang offense.  Given the regularity with which courts employ the maxim *expressio unius est exclusio alterius,* why isn't it reasonably possible — *especially because* the trial court mentioned the reasonable doubt standard in nine separate instructions pertaining to murder, but not once in any instruction pertaining to the gang offense — that the jury would have understood that the reasonable doubt standard applied only to the murder count and not to the gang offense?

Indeed, the possibility that the jury followed the trial court's instructions literally and did not apply the reasonable doubt standard to the gang offense is consistent with the principle that "the jury is presumed to follow the trial court's instructions." (*People v. Fuiava* (2012) 53 Cal.4th 622, 669.)  This well-established presumption is based on the notion that sworn jurors, thrust into an unfamiliar courtroom environment and charged with the solemn responsibility of deciding whether a person should be convicted of a crime, will follow the specific instructions of the person in authority, the trial judge.  The possibility that the jury did not follow the trial court's instructions literally and instead drew "logical" or "realistic" inferences from those instructions (maj. opn., *ante*, at pp. 30–31) is not consistent with this presumption.

The fact that "none of the court's instructions at trial referred to a lesser standard of proof such as preponderance of the evidence or clear and convincing evidence" (maj. opn., *ante*, at p. 30) provides little reassurance.  Even if the jurors did not consciously infer a standard of proof less than the reasonable doubt standard, there is another reasonable possibility:  The jurors may not have considered or made any inferences about the standard of proof *at all* with respect to the gang offense.  We have no reason (and no legal basis) to presume that a reasonable juror will remedy the absence of any standard of proof instruction by using inferential reasoning.  Just as likely, inadequately instructed jurors may

15

simply pay no attention to the standard of proof, instead substituting whatever standard seems intuitively right, as I suspect most lay people would do if asked whether they believed that a particular fact had been adequately proven. There is no reason to think that a question like "was the defendant an active participant in a street gang?" will necessarily cause jurors to ponder (much less correctly answer) the question "under what standard of proof?"

In any event, whether or not the jurors noticed the instructional omission, whether they thought the omission was intentional, inadvertent, or erroneous, it would have been perfectly reasonable for the jury to follow the trial court's initial admonition to "accept and follow the law *as I state it to you*, regardless of whether you agree with it." (CALJIC No. 1.00, italics added.) There is nothing unreasonable about the possibility that the jury did not apply the reasonable doubt standard in convicting defendant of the gang offense.

## C.

The court's remaining arguments to the contrary are not persuasive. The court relies on *People v. Cowan* (2010) 50 Cal.4th 401 (*Cowan*) to argue that " 'the most logical response' by the jury to the absence of instruction specifically linking the reasonable doubt standard to the gang offense count would have been to conclude that a guilty verdict on that charge was subject to the same reasonable doubt standard that had been described in the court's instructions on murder, the lesser offenses, and the sentencing allegations." (Maj. opn., *ante*, at p. 31, quoting *Cowan*, at p. 492.) But *Cowan* is easily distinguished.

In *Cowan*, a death penalty case, the jury hung as to the Russell murder with which the defendant was charged, but found the defendant guilty of two other murders. At the penalty phase, the jury was instructed with the statutory list of aggravating and mitigating factors, including " 'the presence or absence of criminal activity by the defendant *other than the crimes for which the defendant*

16

*has been tried in the present proceedings*, which involved the use or attempted use of force or violence, or the express or implied threat to use force or violence." (*Cowan*, *supra*, 50 Cal.4th at p. 488, quoting § 190.3, factor (b), italics added.) The jury was further instructed with a modified version of CALJIC No. 8.87, stating that evidence had been introduced of three other criminal acts (a robbery, a burglary, and child abuse) and that " '[b]efore a juror may consider any of such criminal acts as an aggravating circumstance in this case, a juror must first be satisfied beyond a reasonable doubt that the defendant did, in fact, commit such criminal acts. A juror may not consider any evidence of any other criminal acts as an aggravating circumstance.' " (*Cowan*, at p. 488.)

Based on a portion of testimony the jury asked to be read back during deliberations, there was some indication that the jury was improperly considering the Russell murder as a criminal act in aggravation. On appeal, the defendant argued that the trial court had a sua sponte duty to instruct that the Russell murder could not be considered unless the jurors were convinced of defendant's guilt of that murder beyond a reasonable doubt.

In rejecting defendant's contention that the failure to so instruct was prejudicial error, we found it unlikely that the jury was considering the Russell murder as a crime in aggravation because the jury was instructed that crimes in aggravation could only include "criminal activity 'other than the crimes for which the defendant has been *tried* in the present proceedings' " and because the Russell murder was not included in the exclusive list of crimes in aggravation given to the jury. (*Cowan*, *supra*, 50 Cal.4th at p. 491.) We went on to explain that even if the jurors had improperly considered the Russell murder for that purpose, it was "extremely unlikely that individual jurors then believed they could consider the Russell murder as an aggravating factor even if it had not been proved beyond a reasonable doubt. Rather, the most logical response to the absence of a specific

17

instruction would have been to conclude that the Russell murder was subject to the same reasonable doubt standard as the other criminal activity included in the instruction based on CALJIC No. 8.87." (*Id.* at p. 492.)

Thus, in *Cowan*, the only way the jury could have failed to apply the reasonable doubt standard to the Russell murder was by doubly disobeying the trial court's instructions — first, by improperly considering the Russell murder as a crime in aggravation, and second, by ignoring the instructions given by the trial court for considering crimes in aggravation, including the requirement of certainty beyond a reasonable doubt. Unsurprisingly, we found that scenario "extremely unlikely." (*Cowan*, *supra*, 50 Cal.4th at p. 492.) Here, by contrast, the jury could have concluded that the reasonable doubt standard did not apply to the gang offense, not by ignoring or disobeying the trial court's instructions, but by literally following them. (See *ante*, at pp. 15–16.)

Next, the court attempts to distinguish *Vann* and the line of Court of Appeal cases finding reversible error by observing that "[i]n no case . . . did the court's instructions convey that the prosecution bore the burden of proving guilt of any of the crimes of which the defendant was convicted." (Maj. opn., *ante*, at p. 32.) "By contrast in this case," the court says, the jury convicted defendant of voluntary manslaughter after being "informed through a number of predeliberation instructions that to convict defendant of the charged murder or any of its lesser included offenses, it must find him guilty of the offense beyond a reasonable doubt." (*Ibid.*) But this purported distinction does not make it any more likely that the jury applied the reasonable doubt standard *to the gang offense*. As the court says elsewhere, because the "murder charge [was] an entirely different count" (*id.* at p. 19), the possibility that the murder-related instructions "connected the requisite standard of proof to the gang offense is *even more dubious here*" (*ibid.*, italics added) than in other cases where "it cannot be presumed 'that a reasonable doubt instruction given in a *specific* context . . .

18

will necessarily be understood by all of the jurors to apply *generally* . . . .' " (*id.* at p. 16, quoting *Flores*, *supra*, 147 Cal.App.4th at p. 216).

Finally, in an effort to buttress its reliance on the trial court's pre-empanelment instructions, the court says "the present case differs from *Vann*" because there "the trial court ended its predeliberation instructions by informing the jurors that they ' "have been instructed on all the rules of law that may be necessary for you to reach a verdict," ' " thereby "suggest[ing] to the jurors that the predeliberation instructions were 'a self-contained, complete statement of the law they were to follow.' " (Maj. opn., *ante*, at p. 36, quoting *Vann*, *supra*, at p. 227, fn. 6.) "Here, by contrast, the trial judge instructed the jury only that it must 'accept and follow the law as I state it to you.' (See CALJIC No. 1.00.) Nothing in this directive would have led the jurors to believe they must ignore the court's explications of the prosecution's burden of proof given during jury selection." (Maj. opn., *ante*, at p. 36.) Further, the court notes that the trial court said "[a]t the outset of trial" that " 'all of the Court's instructions, whether given before, during, or after the taking of testimony, are of equal importance.' "(*Ibid.*)

But the trial court's introductory admonition *at the outset of predeliberation instructions* to "accept and follow the law *as I state it to you*" (italics added) contains no less a representation of completeness than the concluding instruction in *Vann*. Moreover, as for the trial court's statement that "all of the Court's instructions . . . are of equal importance," here is a more complete quotation of what the trial court said: "I shall now instruct you as to your basic functions, duties and conduct. At the conclusion of the case, I will give you further instructions on the law. All of the Court's instructions, whether given before, during or after the taking of testimony, are of equal importance." This statement was made after the jurors had been selected and sworn, and it refers to instructions given from that point on ("I shall now instruct you . . . ."), not to prior statements

19

the trial court made to prospective jurors.  For reasons already discussed, the trial court's instructions during jury selection have minimal import in curing the instructional omission at issue here.  And the trial court's statements *after* the jurors had been selected and sworn would have done nothing to focus the attention of *prospective* jurors.

### III.

The principle that a person may not convicted of a crime unless proven guilty beyond a reasonable doubt may be part of the general knowledge that jurors bring to the deliberation room, whether instilled by civic education or by watching *Law & Order*.  But this kind of general knowledge is insufficient to ensure that the jury discharges its obligation properly.  Instead, our justice system requires trial courts to instruct the jury on the reasonable doubt standard "after the presentation of evidence" so that the burden is placed "at center stage for consideration during deliberations."  (*Crawford*, *supra*, 58 Cal.App.4th at p. 825.)  " 'No instruction could be more vital . . . , since in every criminal case it directs the jury to put away from their minds [*sic*] all suspicions arising from arrest, indictment, arraignment, and the appearance of the accused before them in his role as a defendant.' [Citation.]"  (*Vann*, *supra*, 12 Cal.3d at p. 227.)  As one Court of Appeal put it: "If any phrase should be ringing in the jurors' ears as they leave the courtroom to begin deliberations, it is 'proof beyond a reasonable doubt.' " (*Elguera*, *supra*, 8 Cal.App.4th at pp. 1222–1223.)

In this case, the court properly holds that the trial court's omission of the standard reasonable doubt instruction, along with the absence of any other instructions that connected the reasonable doubt standard to the gang offense, was federal constitutional error.  But instead of affirming the uncontested reversal of defendant's conviction on that count, today's opinion reaches out to decide an issue that no party asked us to decide.  In deciding that issue, the court contravenes

20

precedent, common sense, and its own opinion.  Whether or not an instructional error of this sort is properly subject to harmless error analysis, no harmless error can be found on the record before us.  How can we be certain beyond a reasonable doubt that the jurors who convicted defendant of the gang offense gave focused attention to the correct standard of proof when they were not instructed on this standard either generally or specifically with respect to that offense?  Simply put, we can't.

Consistent with all California cases that have considered whether inadequate instruction on the requirement of proof beyond a reasonable doubt is reversible error, I would affirm the Court of Appeal's reversal of defendant's conviction on the gang offense.  In all other respects, I join the opinion of the court.

LIU, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Aranda

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 188 Cal.App.4th 1490
**Rehearing Granted**


_____


**Opinion No.** S188204
**Date Filed:** August 27, 2012

_____


**Court:** Superior
**County:** Riverside
**Judge:** Albert J. Wojcik


_____


**Counsel:**

William J. Capriola, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons and Julie L. Garland, Assistant Attorneys General, Pamela Ratner Sobeck, Raymond M. DiGuiseppe, Steven T. Oetting and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

William J. Capriola
Post Office Box 1536
Sebastopol, CA  95473-1536
(7070) 829-9490

Tami Falkenstein Hennick
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-2274