Filed 9/2/14  P. v. Gutierrez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MOSES ANTHONY GUTIERREZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B246878<br>(Super. Ct. No. 1354022)<br>(Santa Barbara County) |

Moses Anthony Gutierrez appeals a judgment following conviction of second degree murder with a finding that he personally used a deadly weapon.  (Pen. Code, §§ 187, subd. (a), 189, 12022, subd. (b)(1).)  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

During the late evening of May 14, 2011, Gutierrez stabbed Alex Anzures in the heart with a folding knife that Gutierrez kept in his pocket.  At the time, Gutierrez and Anzures were party guests in the Santa Maria home of Carlos Bustamonte.  Gutierrez was "spun out, like all twacked out of his mind," from methamphetamine and marijuana use, and Anzures was heavily intoxicated.  The two men did not know each other; they argued at the party following Anzures's comment to Gutierrez's stepsister.

At trial, Gutierrez testified that Anzures attempted to punch him, but missed.  Anzures then retrieved a box cutter from his pocket.  In response, Gutierrez

"stabbed him one time" in claimed self-defense.  Anzures stumbled from the kitchen, held his bleeding chest, and declared that he had been "stuck" by Gutierrez.

Despite emergency medical treatment, Anzures died at the hospital.  A forensic pathologist later performed an autopsy on Anzures's body and found a lethal wound to the heart and three defensive-type wounds to the right hand and forearm.

*Events Prior to and Following the Stabbing*

Earlier that evening, Gutierrez arrived at the Bustamonte residence with his stepsister, Valerie Gutierrez, and several of her friends, including Brittney Rappuhn.[1]  When they arrived, Valerie and Brittney were intoxicated and Gutierrez and Brittney were also under the influence of methamphetamine.  Outside the residence, Gutierrez appeared agitated and "thought everybody was against him."  Brittney described Gutierrez as causing "drama" with her and a "random guy."  Brittney telephoned a friend to pick her up, causing Gutierrez to become angry.  He slapped Brittney twice in the face, brandished a knife at her, and asked if she wanted to "get crazy."  After arguing outside, the group decided to attend the party.

At the party, Anzures became suspicious because Gutierrez wore a backpack.  Anzures was "a little bit" agitated, and Bustamonte attempted to calm him.  Hostility between Gutierrez and Anzures developed, however, and soon they were involved in an argument "about a hooker."  Gutierrez then stated to Anzures:  "Fuck you fool, fuck you, what are you going to do, what what."  Gutierrez stabbed Anzures thereafter; no witnesses saw the stabbing.  Gutierrez testified that he stabbed Anzures in self-defense because Anzures "rushed" him with a box cutter in his hand.

Gutierrez, Valerie, and Brittney fled the residence.  A video camera mounted on a nearby market recorded an image of the group running down the street at 1:47 a.m.  Gutierrez later sent text messages, including to his mother, stating that he "got somebody" and that he "just stuck some foo[l]."

---

[1] We shall refer to the witnesses by their first names not from disrespect, but to ease the reader's task.

Santa Maria police officers arrested Gutierrez the following day. During a search incident to his arrest, officers found a knife in Gutierrez's pants pocket. Following advisement of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, 444, an officer interviewed Gutierrez. In a video-recorded statement, Gutierrez admitted stabbing Anzures because Anzures "reach[ed] in his pocket and then had a little silver thing." The stabbing occurred before Anzures withdrew a "little knife" from his pocket: "[H]e already got stabbed. And then that's when he was already still . . . yanking on it like all retarded and shit." Gutierrez stated that he stabbed Anzures with a kitchen knife that he subsequently abandoned outside. At trial, the prosecutor played the recording of Gutierrez's police interview.

Laboratory testing of Gutierrez's clothing and a box cutter found on the kitchen floor of the Bustamonte residence revealed DNA consistent with that of Anzures. Gutierrez admitted that he cleaned blood from his folding knife following the stabbing.

While the case was pending, Brittany informed Santa Maria Police Detective Paul Flores that she had received threatening phone messages. She then recanted her earlier statements regarding Gutierrez's threatening behavior outside the Bustamonte residence. At trial, Brittany continued to deny that the brandishing incident occurred. The prosecutor then introduced portions of Brittany's audio-recorded interview stating that Gutierrez slapped her face, pulled a knife from his waistband, and brandished it at her. Gutierrez later testified at trial and denied slapping Brittney or brandishing a knife at her.

*Conviction and Sentencing*

The jury convicted Gutierrez of second degree murder and found that he personally used a deadly weapon during commission of the crime. (Pen. Code, §§ 187, subd. (a), 189, 12022, subd. (b)(1).) The trial court sentenced him to a prison term of 16 years to life, including a one-year term for the deadly weapon enhancement. The court also imposed a $10,000 restitution fine, a $10,000 parole revocation restitution fine, a $40 court security assessment, and a $30 criminal conviction assessment, ordered victim

3

restitution, and awarded Gutierrez 628 days of presentence custody credit. (*Id.*, §§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

Gutierrez appeals and contends that the trial court erred by admitting Brittney's recorded interview into evidence.

## DISCUSSION

Gutierrez argues that Brittney's statements constitute inadmissible hearsay pursuant to Evidence Code sections 1235 and 770.[2] He also claims that the statements are improper character evidence precluded by section 1101, subdivision (a), because the evidence tends to establish his violent nature -- that he has a propensity to assault people and brandish a knife without reasonable provocation. Gutierrez asserts that the undue prejudice of this inflammatory evidence outweighs its probative value. (§ 352.)

Gutierrez contends that the improper admission of this evidence violates his federal and California constitutional rights to due process of law and to a fair trial, and is not harmless pursuant to any standard of review. To support his argument of prejudicial error, he argues that the evidence of self-defense is strong in view of the lack of witnesses to the stabbing.

For several reasons, we reject Gutierrez's contentions.

First, Gutierrez has forfeited certain of his appellate claims regarding Brittney's recorded interview. An objection to offered evidence must be timely and must make clear the specific ground. (§ 353, subd. (a); *People v. Houston* (2012) 54 Cal.4th 1186, 1213.) Although Gutierrez objected on other grounds (relevance of evidence of assaults prior to that evening, lack of foundation, conclusory, hearsay, undue prejudice), these objections were insufficient to preserve the claim that the evidence was inadmissible pursuant to section 1101, subdivision (a). (*People v. Valdez* (2012) 55 Cal.4th 82, 130 [relevance and other objections at trial insufficient to preserve appellate claim that evidence was inadmissible character evidence pursuant to section 1101].)

---

[2] All further statutory references are to the Evidence Code.

Second, forfeiture aside, the trial court did not abuse its discretion by allowing evidence of Gutierrez's assault upon Brittney. (*People v. Homick* (2012) 55 Cal.4th 816, 859 [standard of review of trial court's evidentiary rulings, including evidence of a prior inconsistent statement].) The evidence was probative regarding Gutierrez's intent in stabbing Anzures. Section 1101, subdivision (b) permits evidence of uncharged misconduct when relevant to establish a fact other than the defendant's character or disposition, such as his intent in committing the crime. (*People v. Edwards* (2013) 57 Cal.4th 658, 713.)

Gutierrez was under the influence of methamphetamine and had not slept for several days when he brandished a knife at Brittney. He was agitated, confrontational, and engaged in "drama" outside the Bustamonte residence with Brittany and also with a stranger. Shortly thereafter, he argued with and killed Anzures with the same knife that he brandished at Brittany. The incident with Brittany was relevant to prove that Gutierrez behaved aggressively and did not act in self defense, a burden that the prosecutor was required to carry. (*People v. Aranda* (2012) 55 Cal.4th 342, 360.)

The incident with Brittany also established that Gutierrez was armed with a folding knife, the same knife that he used to stab Anzures. During his police interview, Gutierrez stated that he grabbed a kitchen knife to stab Anzures and that he abandoned the knife in the landscaping when he fled the residence.

The trial court also did not abuse its discretion pursuant to section 352. (*People v. Suff* (2014) 58 Cal.4th 1013, 1066 [standard of review of trial court's ruling pursuant to section 352].) The circumstances of the assault upon Brittany were less inflammatory than the murder of Anzures. (*People v. Edwards*, *supra*, 57 Cal.4th 658, 713; *People v. Ewoldt* (1994) 7 Cal.4th 380, 405.) Evidence is substantially more prejudicial than probative if it poses an intolerable risk to the fairness of the proceedings or the reliability of the outcome. (*Edwards*, at p. 713.) An intolerable risk is not present here.

Moreover, the trial court properly admitted evidence of Brittney's interview statements pursuant to the prior inconsistent statement exception to the hearsay rule.

(§§ 1235, 770; *People v. Homick*, *supra*, 55 Cal.4th 816, 859.) A statement by a witness that is inconsistent with his trial testimony is admissible to establish the truth of the matter asserted pursuant to the requirements in sections 1235 and 770. (*Ibid.*) Inconsistency in effect, such as evasive testimony, also satisfies the test for admitting a prior statement. (*Ibid.*) At trial, Brittney expressly denied and provided evasive responses regarding the brandishing incident. Her interview statements thus fall within the statutory hearsay exception of section 1235.

*People v. Sam* (1969) 71 Cal.2d 194, and *Bowen v. Ryan* (2008) 163 Cal.App.4th 916, upon which Gutierrez relies, are distinguishable. In *Sam*, the trial court improperly permitted evidence of defendant's two drunken brawls to prove that the charged murder was not committed in self-defense. The brawls occurred within two years of the charged crime and their relevance to modus operandi, common scheme, or plan was "tenuous at best." (*Id.* at p. 206.) In *Bowen*, a child patient filed an action against a dentist alleging that he was "choked . . . and shoved" during treatment. (*Id.* at p. 918.) *Bowen* concluded that the trial court erred by admitting evidence that the dentist had mistreated nine other children because the evidence did not establish the existence of a common plan. (*Id.* at pp. 924-925.) Here Gutierrez's assault on Brittney reflected his "spun out" and "twacked out" mental state at the time he joined the party and confronted Anzures.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

6

Edward H. Bullard, Judge

Superior Court County of Santa Barbara

_____

Jonathan E. Demson for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, for Plaintiff and Respondent.