Filed 7/14/25  P. v. Rodriguez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>　　v.<br><br>DAVID ANDREW RODRIGUEZ,<br><br>　Defendant and Appellant. | G064309<br><br>(Super. Ct. No. RIF2304427)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Frederick Paul Dickerson III, Judge. Reversed and remanded.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A.

Sevidal, Randall D. Einhorn, Susan Elizabeth Miller and Daniel Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

*  *  *

This appeal stems from David Andrew Rodriguez's (Rodriguez) conviction for robbery. The facts underlying the robbery are not in dispute. The victim was on the phone when an assailant approached him, knocked him down, took his phone, and fled. The issue at trial was the assailant's identity. During his testimony, the victim could not identify Rodriguez as the assailant. However, the prosecution offered evidence that the victim made an in-field identification of Rodriguez to an officer who did not testify. A different officer, who was not present during the in-field identification, relayed the in-field identification officer's statements to the jury. Over objection, the court admitted the identification at trial. All parties agree, as do we, this was error. Because we cannot conclude that the error was harmless beyond a reasonable doubt, we reverse.

STATEMENT OF FACTS

In an amended information, the prosecution charged Rodriguez with one felony count of robbery (Pen. Code,[1] § 211; count 1) as well as two prior serious felony convictions (§ 667, subd. (a)) and two strike priors (§§ 667, subds. (c) & (e)(2)(A), 1170.12, subd. (c)(2)(A)).

During the jury trial, the prosecution called the responding officer to testify. The prosecution introduced a portion of this officer's interview with the victim. In the interview, the victim stated a man came over to him, asked for a lighter, knocked him down, grabbed his phone, and ran. The victim told the officer he could identify his attacker.

---

[1] All further statutory references are to the Penal Code.

2

The following is an excerpt of the officer's trial testimony regarding the in-field identification:

"Q. Okay. Do you know if there was any in-field identification ever done?

"A. Yes.

"Q. Okay. What was an in-field identification? How does that process work?

"A. Essentially, a deputy will take the victim to where a suspect was located to identify whether or not that was the suspect or if it wasn't the suspect that committed the crime.

"Q. Okay. And to your knowledge of the investigation, this sort of in-field lineup process occurred with [the victim]?

"A. Yes.

"Q. And to your knowledge, was he able to identify a specific individual?

"A. Yes.

"Q. Okay. Do you know that individual's name that he was able to identify?

"A. Mr. Rodriguez.

"[DEFENSE]: Objection. Lack of foundation.

"THE COURT: Overruled."

During cross-examination, the officer testified he "did not take place in the in-field lineup. It was other deputies." He did not know if the officers gave an admonishment to the victim prior to the identification. The testifying officer was not present during the in-field identification, and he was not present when Rodriguez was detained.

The victim testified at trial and confirmed the assailant pushed him down and stole his phone. The victim did not recall speaking with the police that day. He could not recall what the attacker was wearing or the attacker's age. The victim testified he would remember his attacker if he saw that person again. But when questioned at trial: "Do you see [your attacker] in this room right now," the victim responded: "No."

The victim's niece testified at trial that she was on the phone with her uncle when he was attacked. She heard the attack and called 911. She then drove to her uncle's house which was about ten minutes from her home. She did not witness the crime. A neighbor who "witnessed everything" told her what the attacker was wearing, however, she did not know who attacked her uncle and could not identify the attacker. She did not observe the police arrest anyone nor did she observe the in-field identification.

Another officer who arrived at the scene testified the victim's niece told him that someone described the suspect as "a male . . . wearing a white shirt and gray shorts." This officer located Rodriguez who was "wearing black pants and [a] black jacket." The officer said Rodriguez appeared "apprehensive" and "very cautious." Rodriguez was walking with another man. At first, Rodriguez started walking towards the officer, but then the victim's niece saw Rodriguez, pointed, and said, "'That's him. That's him.'"

Rodriguez then took off running and the officer gave chase. After locating Rodriguez, Rodriguez told the officer, "'I did not hit that man.'" The officer did not recall locating a cell phone on Rodriguez. The victim's niece or "somebody else from [the police] department" told the officer, "'That's him, and he changed his clothes.'" The officer did not see any discarded clothing in the area aside from a jacket hanging on a railing.

4

During closing argument, the prosecution told the jury the police were "able to provide for us the confirmation of a positive ID" which came from the victim. The prosecution reiterated, "We know that [the victim] identified who attacked him."

In its closing, the defense argued the case was about identification. The defense told the jury "there was never a positive identification of [Rodriguez]," let alone evidence of a positive identification from the victim. "[U]nfortunately, in this case, somebody is wrongfully arrested for—wrongfully detained, wrongfully arrested, wrongfully charged for robbery." In rebuttal the prosecution again told the jury the victim "[made] a positive ID" of Rodriguez.

During deliberations, the jury asked for a readback of the officer's testimony who testified the victim made a positive in-field identification of Rodriguez. Following the readback, the jury returned a verdict of guilty. Rodriguez admitted the remaining allegations. The trial court sentenced Rodriguez to 25 years to life on count one and five years on each of the prior serious felony convictions to run consecutive to count one.

DISCUSSION

I.

THE TRIAL COURT ERRED

The Attorney General concedes that the trial court erred in overruling Rodriguez's foundation objection which led to the introduction of testimony that the victim made an in-field identification of him. We accept that concession. The Attorney General also concedes the error prevented Rodriguez from confronting witnesses in violation of his federal constitutional rights. As the prosecution introduced the statements of the officer who conducted the in-field identification, and that officer did not testify, we agree.

5

## II.

### THE ERROR REQUIRES REVERSAL

Because the officer who conducted the in-field identification in which the victim identified Rodriguez did not testify, the introduction of that officer's statements violated Rodriguez's right to confront witnesses against him as guaranteed by the Sixth Amendment. (*People v. Ogaz* (2020) 53 Cal.App.5th 280, 295.) "Violation of the Sixth Amendment's confrontation right requires reversal of the judgment against a criminal defendant unless the prosecution can show 'beyond a reasonable doubt' that the error was harmless." (*People v. Rutterschmidt* (2012) 55 Cal.4th 650, 661.)

We "look[] to the 'whole record' to evaluate the error's effect on the jury's verdict." (*People v. Aranda* (2012) 55 Cal.4th 342, 367.) "When there is "'a reasonable possibility'" that the error might have contributed to the verdict, reversal is required." (*Ibid.*) In determining whether witness testimony admitted in violation of a defendant's confrontation rights was harmless we consider, "'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" (*People v. Mitchell* (2005) 131 Cal.App.4th 1210, 1225.)

Here, the error was not harmless. Identity was the sole issue presented to the jury. There was no dispute a robbery occurred. The defense was Rodriguez did not commit it—someone else did. The testimony introducing the victim's in-field identification was the sole piece of evidence directly identifying Rodriguez as the assailant.

The Attorney General argues there was "overwhelming" evidence showing Rodriguez was the robber. We agree there certainly was evidence identifying Rodriguez as the robber. The victim's niece received a description of the robber from other witnesses and when she saw Rodriguez, she shouted to police, "'[t]hat's him.'" Hearing this, Rodriguez fled and when he was apprehended, Rodriguez spontaneously stated, "'I did not hit that man.'"

But given that the issue in the case was identity, the jury likely gave great weight to the victim's in-field identification. This is especially true as other evidence showed Rodriguez was not the robber. Rodriguez's clothes did not match the description of what the assailant was wearing nor was Rodriguez found with the stolen property. The victim was the only person who witnessed the crime and testified at trial, but the victim could not identify Rodriguez in court as his attacker.

Consider *People v. Livingston* (2012) 53 Cal.4th 1145 (*Livingston*). There, the prosecution admitted a videotape of a police interview where a witness, who had died by the time of trial, identified a vehicle involved in a shooting, described the shooter in a manner consistent with the defendant's appearance, and selected the defendant from a photographic lineup as the shooter. (*Id.* at p. 1158.) The defendant never had an opportunity to cross-examine this witness. (*Ibid.*) The California Supreme Court held the admission of the videotape violated the defendant's confrontation clause rights. (*Ibid.*) But given other evidence, the error was harmless beyond a reasonable doubt. (*Id.* at p. 1159.) Notably, two other witnesses identified the defendant as the shooter. (*Ibid.*) One of the witnesses identified the defendant's car as the car involved in the shooting. (*Ibid.*) Other witnesses testified the defendant and his car were in the area of the crime at the time it occurred. (*Ibid.*) Moreover, given the nature of the

defendant's appearance, he was "distinctive and easy to identify." (*Id.* at p. 1160.) The prosecution also did not heavily rely on the videotape during trial. (*Ibid.*) The prosecutor only briefly mentioned it during opening and closing and "said nothing to distinguish it from the other positive identifications by witnesses who actually testified." (*Ibid.*) Last, "[n]othing in the record suggest[ed] the videotape was important to the jury or had any effect on its verdict. During deliberations, the jury asked no questions and requested no readback of testimony." (*Ibid.*)

Here, unlike in *Livingston*, the in-field identification testimony was not cumulative. There were no other witnesses who identified Rodriguez as the assailant. The prosecutor relied heavily on that testimony during closing argument and repeatedly reminded the jury that the victim made a positive in-field identification of Rodriguez. The jury's request for a readback of that testimony gives us further reason to believe it placed great weight on the in-field identification. On this record, we conclude there is a reasonable possibility its introduction contributed to the verdict.

## DISPOSITION

The judgment is reversed, and the matter is remanded for a new trial.


SANCHEZ, ACTING P. J.

WE CONCUR:


GOODING, J.


SCOTT, J.